PEOPLE v DINARDO

Docket No. 294194. Submitted October 6, 2010, at Detroit. Decided
    October 12, 2010, at 9:10 a.m.

John T. Dinardo was charged in the 37th District Court with
    operating a motor vehicle while intoxicated, third offense, MCL
    257.625(1) and (9)(c). At his preliminary examination, defen-
    dant moved to suppress the results of the breath test adminis-
    tered by Officer Michael Lake using a DataMaster machine
    after defendant's arrest. Although the DataMaster machine had
    generated a printed "ticket" for the tests, the ticket was not
    available by the time of the preliminary examination. Lake had
    recorded the DataMaster results on a DI-177 breath-test report,
    which was available. The court, Jennifer M. Faunce, J., granted
    defendant's motion to suppress but bound him over to the
    Macomb Circuit Court for trial as charged. Defendant again
    moved to suppress the DataMaster test results, and the circuit
    court, Edward A. Servitto, Jr., J., held a hearing at which
    defendant argued that the lack of the DataMaster ticket ren-
    dered other evidence regarding the test results inadmissible
    hearsay and denied him his constitutional right to confront the
    witnesses against him. The prosecution argued that the Data-
    Master machine was not a declarant, so Lake's testimony
    repeating the recorded test results would not be hearsay and
    also argued that because Lake had read the original test results
    and recorded them on the DI-177 report at the time, he had
    personal knowledge of the results and should be able to present
    them as testimony. The circuit court concluded that the report
    was hearsay and could not be admitted. The circuit court
    further held that although Lake could testify if he had an
    independent recollection of the breath-test results, the report
    could not be used to refresh Lake's memory. The circuit court
    subsequently denied the prosecution's motion for reconsidera-
    tion, concluding that the test itself was testimonial in nature
    and that the test results therefore implicated defendant's
    constitutional right to confront the witnesses against him. The
    prosecution appealed.

    The Court of Appeals held:

1. The circuit court erred by concluding that the DataMaster ticket was testimonial in nature. The Confrontation Clause of the Sixth Amendment guarantees that a person facing criminal prosecution has the right to be confronted with the witnesses against him or her, and § 20 of article 1 of the Michigan Constitution provides the same protection. Testimonial statements of witnesses absent from trial are admissible only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant. Statements are testimonial if the primary purpose of the statements or the questioning that elicited them was to establish or prove past events potentially relevant to later criminal prosecution.

2. Laboratory reports prepared by nontestifying analysts are testimonial hearsay. Data that are automatically generated by a machine and presented without human input, analysis, or interpretation are not testimonial because the machine is not a witness in any constitutional sense. The DataMaster ticket was generated by the machine without human input and no expert interpretation was required for the test results to be understood. The Confrontation Clause did not restrict the admissibility of the DataMaster results.

3. The DataMaster test results were not hearsay under Michigan law. Under MRE 801(c), hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Although a printout of information entered into a machine by a person is hearsay, a printout of machine-generated information does not constitute hearsay because a machine is not a person and therefore, under MRE 801(6), is not a declarant capable of making a statement.

4. The DI-177 report, while hearsay, was admissible as a recorded recollection. A hearsay document may be admitted under MRE 803(5) if the document pertains to matters about which the declarant once had knowledge, the declarant now has an insufficient recollection about those matters, and the document is shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his or her memory. The DI-177 report satisfied the criteria because Lake saw the DataMaster ticket and therefore had personal knowledge of the information at the time he recorded it onto the DI-177 report, he indicated that he no longer had any independent recollection of the specific results printed on the DataMaster ticket, and he personally prepared the DI-177 report.

Lake should be permitted to read the contents of the report into evidence at trial and testify regarding the test results.

Reversed and remanded to the circuit court.

1. Constitutional Law — Evidence — Right of Confrontation — Testimonial Statements — Machine-Generated Test Results.

Testimonial statements of witnesses absent from trial are admissible only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant; statements are testimonial if the primary purpose of the statements or the questions that elicited them was to establish or prove past events potentially relevant to later criminal prosecution; although laboratory reports prepared by nontestifying analysts are testimonial hearsay, data that are automatically generated by a machine and presented without human input, analysis, or interpretation are not testimonial because the machine is not a witness in any constitutional sense. (US Const, Am VI; Const 1963, art 1, § 20).

2. Evidence — Hearsay — Declarant — Machine-Generated Test Results.

Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted; a printout of machine-generated information does not constitute hearsay because a machine is not a person and therefore not a declarant capable of making a statement (MRE 801[b], [c]).

3. Evidence — Hearsay — Recorded Recollection Exception.

A hearsay document may be admitted if the document pertains to matters about which the declarant once had knowledge, the declarant now has an insufficient recollection about those matters, and the document is shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his or her memory (MRE 803[5]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Eric J. Smith*, Prosecuting Attorney, *Robert Berlin*, Chief Appellate Lawyer, and *Mary Jo Diegel*, Assistant Prosecuting Attorney, for the people.

John T. Dinardo *in propria persona*.

Before: FORT HOOD, P.J., and JANSEN and WHITBECK, JJ.

JANSEN, J. The prosecution appeals by leave granted the circuit court's order suppressing evidence of certain DataMaster breath-test results. For the reasons set forth in this opinion, we reverse the circuit court's order and remand for further proceedings consistent with this opinion.

I

In November 2008, defendant was arrested on suspicion of drunk driving and taken to the Warren Police Department for alcohol testing using a DataMaster machine. Warren Police Officer Michael Lake administered the DataMaster test. Lake testified that he monitored defendant for at least 15 minutes before administering the test, then took two breath samples two minutes apart in accordance with standard procedures. Lake wrote the test results on a DI-177 breath-test report. According to Lake's DI-177 report, the DataMaster machine indicated that both samples registered alcohol levels of 0.20 percent.

At the preliminary examination, Lake testified that he had administered the DataMaster tests and had written down the results on his DI-177 report. However, he testified that he did not have a copy of the original DataMaster "ticket,"[1] which had been printed directly from the machine at the time of the tests. Defendant had been given a copy of the DataMaster ticket, but the original ticket could not be found and no copies were

---

[1] A DataMaster ticket apparently states the blood alcohol percentage for each sample, the time when the testing procedure began (including the observation period before the test), and the exact time when each sample was taken and analyzed.

available by the time of the preliminary examination. Officer Lake admitted that he could not independently recollect the specific results of defendant's breath tests, but recalled that he had written them down at the time on the DI-177 report, which was available.

Defendant moved to suppress the breath-test results at the preliminary examination. The district court granted defendant's motion to suppress but nonetheless bound defendant over to the circuit court for trial on a charge of operating a motor vehicle while intoxicated, third offense. MCL 257.625(1) and (9)(c).

Following bindover, defendant moved the circuit court to suppress the DataMaster test results and sought an evidentiary hearing on the issue. Defendant argued that the lack of the DataMaster ticket rendered other evidence regarding the test results inadmissible hearsay and denied him his constitutional right to confront the witnesses against him. Because the relevant facts did not appear to be in dispute, the circuit court dispensed with an evidentiary hearing. The prosecution argued that the district court had erred by ruling the test results inadmissible. The prosecution argued that the DataMaster machine was not a declarant, so the officer's testimony repeating the recorded test results would not be hearsay. The prosecution also argued that because Officer Lake had read the original test results and recorded them directly onto the DI-177 report at the time, he had personal knowledge of the results and should be able to present them in his testimony.

The circuit court concluded that the DI-177 report was hearsay and could not be admitted into evidence. The court noted that if Officer Lake had an independent recollection of the breath-test results, he might be able to testify regarding the numbers he had read from the DataMaster ticket. However, the court stated that if

Lake lacked any independent recollection of the results and could not produce the DataMaster ticket, he would have no basis for testifying about the breath-test results. The court also ruled that if Lake could not specifically remember the contents of the DataMaster ticket, he could not testify regarding what he may have written on the DI-177 report. The prosecution argued that Lake should be able to use the DI-177 report to refresh his memory, even if the DI-177 report was itself inadmissible. The circuit court disagreed, noting that use of the DI-177 report would not effectively "refresh" Lake's memory of the DataMaster results, but instead just show him what numbers he had written down.

The prosecution next argued that even without the test results, Lake should be able to testify that defendant's blood alcohol level exceeded the legal limit, which resulted in defendant being booked and charged. The prosecution further argued that defendant was not prejudiced by the lack of the DataMaster ticket because defendant had been given a copy of the DataMaster machine's printout. Defense counsel countered that defendant did not have a copy of the DataMaster ticket. The court agreed that Officer Lake could testify that defendant was arrested following the DataMaster test results. However, the court noted that because the DataMaster ticket would have shown when the machine was last purged, the duration of the required observation period before testing, and the times that the specific breath samples were taken, the DataMaster ticket would have helped to establish the reliability of the breath tests. The court reasoned that, without this information, the reliability of the test results would be suspect, and the defense would be denied the opportunity to question the reliability of the results. The prosecution argued that whether the proper protocol was followed prior to defendant's breath tests went to

the weight of the evidence rather than its admissibility and noted that defense counsel would be permitted to cross-examine Officer Lake regarding the procedures followed and the lack of supporting documentation. The court disagreed with the prosecution, stating that because the entire testing process had been documented on the DataMaster ticket, the ticket was the foundation for determining defendant's blood alcohol level and whether the proper procedures were followed. The court stated that without the ticket, the test results could not be admitted.

The circuit court entered an order granting defendant's motion to exclude the DataMaster test results. The order provided in relevant part that the prosecution would be "precluded from arguing at trial that defendant's [blood alcohol content] was .08 or in excess of .08," that the prosecution "can only argue [at trial] that defendant was operating under the influence of alcoholic liquor under MCL 257.625," and that the prosecution would be permitted to "present testimony that defendant was charged and arrested after the Datamaster results showed .08 or more based upon the independent recollection of the police officer only to show why defendant was arrested and charged."

The prosecution moved for reconsideration, to adjourn trial, and to stay the proceedings pending an interlocutory appeal. The prosecution also apparently filed a motion to reverse the district court's order suppressing evidence of the DataMaster test results. The circuit court addressed these motions, explaining that it had never considered or reviewed the district court's decision, but had instead addressed the admissibility of the DataMaster test results de novo on the facts presented by the parties. Citing *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d

314 (2009), *Crawford v Washington*, 541 US 36; 124 S
Ct 1354; 158 L Ed 2d 177 (2004), and *People v Bryant*,
483 Mich 132; 768 NW2d 65 (2009), the circuit court
concluded that "[t]here's no question that the test itself
was testimonial in nature" and that the test results
therefore implicated defendant's constitutional right to
confront the witnesses against him. The circuit court
denied the prosecution's motions for reconsideration
and to stay the proceedings pending appeal, but granted
the motion to adjourn trial.

The prosecution sought leave to appeal in this Court,
arguing that the circuit court had erred by suppressing
evidence of the DataMaster test results. This Court
granted the prosecution's application for leave to appeal
and stayed all proceedings in the circuit court.[2]

II

In general, we review for an abuse of discretion a
circuit court's decision concerning the admission of
evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d
607 (1999). However, we review de novo the circuit
court's ultimate decision on a motion to suppress evi-
dence, as well as all preliminary questions of law. *Id.*;
*People v Akins*, 259 Mich App 545, 563; 675 NW2d 863
(2003). Similarly, whether the admission of evidence
would violate a defendant's constitutional right of con-
frontation is a question of law that we review de novo.
*Bryant*, 483 Mich at 138.

III

We conclude that the DataMaster ticket at issue in
this case was neither testimonial in the constitutional

---

[2] *People v Dinardo*, unpublished order of the Court of Appeals, entered
November 2, 2009 (Docket No. 294194).

sense nor hearsay under Michigan law. We further conclude that the DI-177 report constituted a recorded recollection under MRE 803(5). Accordingly, the circuit court erred by suppressing evidence of the DataMaster breath-test results, by ruling that Officer Lake's testimony concerning the DataMaster results would violate defendant's constitutional right to confront the witnesses against him, and by precluding Lake from reading the contents of the DI-177 report into evidence.

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. This "bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford*, 541 US at 42. The Michigan Constitution provides the same guarantee for criminal defendants. Const 1963, art 1, § 20; see also *People v Bean*, 457 Mich 677, 682; 580 NW2d 390 (1998). Testimonial statements of witnesses absent from trial are therefore admissible only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant. *Crawford*, 541 US at 59; *Bryant*, 483 Mich at 138. Ordinarily, whether a statement is testimonial in nature depends on whether it constitutes a " 'declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford*, 541 US at 51 (citation omitted). More particularly, we have explained that "[s]tatements are testimonial where the 'primary purpose' of the statements or the questioning that elicits them 'is to establish or prove past events potentially relevant to later criminal prosecution.' " *People v Lewis (On Remand)*, 287 Mich App 356, 360;

788 NW2d 461 (2010), quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

In *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2531-2532, the United States Supreme Court held that "certificates of analysis" showing the results of chemical testing of seized narcotics constituted "testimonial statements" under *Crawford*. The certificates at issue in *Melendez-Diaz* were sworn statements by laboratory analysts that reported the results of analyses performed on the seized drug samples. The *Melendez-Diaz* Court explained:

> The documents at issue here, while denominated by Massachusetts law "certificates," are quite plainly affidavits: "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths." They are incontrovertibly a " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " The fact in question is that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine—the precise testimony the analysts would be expected to provide if called at trial. The "certificates" are functionally identical to live, in-court testimony, doing "precisely what a witness does on direct examination." [*Id.* at ___; 129 S Ct at 2532 (citations omitted).]

Similarly, this Court has held that laboratory reports prepared by nontestifying analysts are "testimonial hearsay" within the meaning of *Crawford*. See, e.g., *People v Payne*, 285 Mich App 181, 198; 774 NW2d 714 (2009); *People v Lonsby*, 268 Mich App 375, 392-393; 707 NW2d 610 (2005). Such reports constitute testimonial hearsay that may not be admitted in evidence unless (1) it is shown that the analyst who prepared the report is unavailable to testify at trial and (2) the defendant has had a prior opportunity to cross-examine

the analyst. *Payne*, 285 Mich App at 198-199; see also *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2532.

We cannot conclude that the original DataMaster ticket, showing the breath-test procedures and defendant's specific blood alcohol level, amounted to testimonial hearsay within the meaning of *Crawford*. As explained previously, the Confrontation Clause guarantees a criminal defendant the right "to be confronted with the *witnesses* against him." US Const, Am VI (emphasis added). The documents at issue in *Melendez-Diaz*, *Payne*, and *Lonsby* constituted testimonial hearsay precisely because they were all prepared by human analysts who recorded the results of various laboratory tests and set down their own conclusions in written form. Such human analysts are unquestionably "witnesses" within the meaning of the Sixth Amendment. In contrast, the DataMaster ticket at issue in this case was generated entirely by a machine without the input of any human analyst. No human analyst entered data into the DataMaster machine or recorded findings or conclusions on the DataMaster printout. Nor was any expert interpretation required for the DataMaster test results to be understood. Indeed, similar to the fingerprint cards at issue in *People v Jambor (On Remand)*, 273 Mich App 477, 488; 729 NW2d 569 (2007), the DataMaster ticket "contained no subjective statements" and did not detail the results of any work performed by a nontestifying analyst. Instead, defendant simply blew into the DataMaster machine, whereupon the machine automatically analyzed his breath and reported the results of its analysis in the form of a printed ticket. The machine was the sole source of the test results, which spoke entirely for themselves. We agree with courts from other jurisdictions that have held that a machine is not a witness in the constitutional sense and that data automatically generated by a

machine are accordingly nontestimonial in nature. See, e.g., *Wimbish v Commonwealth*, 51 Va App 474, 483-484; 658 SE2d 715 (2008); *United States v Moon*, 512 F3d 359, 362 (CA 7, 2008); *United States v Washington*, 498 F3d 225, 230 (CA 4, 2007); *Caldwell v State*, 230 Ga App 46, 47; 495 SE2d 308 (1997). As the Virginia Court of Appeals has aptly explained, "information generated by a machine, and presented without human analysis or interpretation is not testimonial because the machine is not a witness in any constitutional sense and thus the data standing alone is not a testimonial statement under the Confrontation Clause of the Sixth Amendment." *Wimbish*, 51 Va App at 484 n 2. Because the DataMaster breath-test results, printed on the Data-Master ticket, were self-explanatory data produced entirely by a machine and not the out-of-court statements of a witness, the Confrontation Clause did not place any restrictions on their admissibility. See *id*. at 484.

We also conclude that the DataMaster test results did not constitute hearsay under Michigan law. "Hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c), and "declarant" is defined as "a *person* who makes a statement," MRE 801(b) (emphasis added). A printout of machine-generated information, as opposed to a printout of information entered into a machine by a person, does not constitute hearsay because a machine is not a person and therefore not a declarant capable of making a statement. See, e.g., *State v Reynolds*, 746 NW2d 837, 843 (Iowa, 2008); *United States v Hamilton*, 413 F3d 1138, 1142 (CA 10, 2005); *United States v Khorozian*, 333 F3d 498, 506 (CA 3, 2003); *State v Weber*, 172 Or App 704, 709; 19 P3d 378 (2001); *State v Van Sickle*, 120 Idaho 99, 102; 813 P2d 910 (1991). Indeed, as one well-known Michigan trea-

tise explains, "[w]hen . . . a 'fact' is 'asserted' by a non-human entity, such as a clock 'telling the time' or a tracking dog following a scent, the 'statement' is not hearsay because the 'declarant' is not a 'person.' " Robinson, Longhofer & Ankers, Michigan Court Rules Practice: Evidence (2d ed), § 801.3, pp 7-8. The Data-Master machine at issue in the present case is not a declarant because it is not a person, but a tool for analysis that self-generates test results and prints those results on a paper ticket. Since the DataMaster machine is not a declarant capable of making a statement, the results that it generates are not hearsay.

Lastly, although the DI-177 report unquestionably constituted hearsay under Michigan law, we conclude that admission of the DI-177 report would not violate defendant's constitutional right of confrontation and that Officer Lake should be entitled to read the contents of the DI-177 report into evidence pursuant to MRE 803(5). As noted previously, Officer Lake filled out the DI-177 report at the time of the DataMaster testing, contemporaneously recording defendant's breath-test results on the DI-177 report as those results were automatically generated by the DataMaster machine. While Lake's written documentation of defendant's breath-test results on the DI-177 report constituted testimonial hearsay, Lake is available to testify and to be cross-examined at trial regarding the contents of the report. Because Lake is available to testify and to be cross-examined concerning his out-of-court assertions on the DI-177 report, his testimony regarding the contents of the DI-177 report will not violate defendant's constitutional right to confront the witnesses against him. See *Crawford*, 541 US at 59.

Nor should the contents of the DI-177 report be excluded from evidence as inadmissible hearsay. It is

true that Officer Lake has no independent recollection of the specific numbers that were printed on the Data-Master ticket. However, Lake recorded defendant's blood alcohol levels on the DI-177 report at the same time as he read the results from the DataMaster ticket. Accordingly, we conclude that the DI-177 report qualifies as a recorded recollection under MRE 803(5), which excludes from the hearsay rule

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

As this Court has explained, hearsay documents may be admitted as recorded recollections under MRE 803(5) if they meet three requirements:

> "(1) The document must pertain to matters about which the declarant once had knowledge; (2) [t]he declarant must now have an insufficient recollection as to such matters; [and] (3) [t]he document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory." [*People v Daniels*, 192 Mich App 658, 667-668; 482 NW2d 176 (1992) (citation omitted).]

In this case, the DI-177 report plainly satisfies all three requirements for admissibility. Officer Lake saw the DataMaster ticket and therefore had personal knowledge of the breath-test results at the time he recorded them onto the DI-177 report. Furthermore, Lake has indicated that he no longer has any independent recollection of the specific results printed on the DataMaster ticket. Lastly, it is undisputed that Lake personally prepared the DI-177 report. Because the DI-177 report

meets all requirements for admissibility under MRE 803(5), *Daniels*, 192 Mich App at 667-668, Officer Lake will be permitted to read its contents into evidence at trial.[3]

IV

In sum, while the DataMaster ticket showed facts relevant to the ultimate issue of defendant's guilt, the ticket was neither a testimonial statement nor hearsay because it was not the statement of a witness or a declarant. Instead, the DataMaster ticket was generated by a machine, following an entirely automated process that did not rely on any human input, data entry, or interpretation. Because the DataMaster ticket was not a testimonial hearsay statement, Officer Lake will be permitted to testify regarding the breath-test results. Moreover, because the contemporaneously prepared DI-177 report constitutes a recorded recollection pursuant to MRE 803(5), Lake will be permitted to read its contents into evidence at trial.

Reversed and remanded to the circuit court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[3] Although the contents of the DI-177 report may be admitted and read into evidence at trial, we note that the report "may not itself be received as an exhibit unless offered by an adverse party." MRE 803(5).