# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DEMAUN RASHAWN BUTLER,

   Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 322690
Wayne Circuit Court
LC No. 14-000672-FC

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of first-degree home invasion, MCL 750.110a(2), and second-degree criminal sexual conduct ("CSC 2"), MCL 750.520c(1)(c) (sexual contact occurring during the commission of a felony). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 11 to 20 years' imprisonment for the first-degree home invasion conviction and 9 to 15 years' imprisonment for the CSC 2 conviction. We affirm, but remand for the ministerial task of correcting defendant's presentence investigation report ("PSIR").

## I. FACTUAL BACKGROUND

This case arises from an incident occurring at the home that the complainant shared with her three children and her roommate, Samantha Antisdel. On the evening of the incident, the complainant and her three children; Samantha and her four children (including her son, 16-year-old Jordan Antisdel); Jordan's girlfriend, Stacy Grimm; and Samantha's and Jordan's cousin, "Steve," were celebrating the New Year's holiday at the complainant's residence.

The complainant became intoxicated and "passed out" around 10:00 p.m. that evening. As a result, she has no recollection of the evening's events independent from the stories that she heard from other people. However, early in the morning, she awoke in her bedroom "feeling violated" and walked out to the living room to observe Samantha, Jordan, Steve, and Stacy "beating up" a complete stranger, who was lying on the floor. Samantha and Jordan would later explain that the stranger was defendant, and that they had caught defendant "sexually molesting" the complainant while she was unconscious. That morning, though, the complainant did not see defendant's face as she watched him break free from his assailants and run naked from her house.

-1-

At trial, Jordan testified that he had met defendant, a stranger, at a party store on New Year's Eve and invited him back to the complainant's house to hang out. He said defendant agreed to come and played cards with Samantha and Steve for an hour or so before Samantha suggested that they go to a neighbor's house. Samantha, who did not appear at trial but testified at the preliminary examination, confirmed that defendant was with them that evening and that he accompanied her, Jordan, Stacy, and Steve to a neighbor's house. However, she claimed that defendant was the one to suggest that they visit the neighbor's house. Jordan said that they were at the neighbor's home for about 15 minutes, while Samantha thought it was approximately an hour, but they both agreed that, at some point, they realized that defendant was no longer with them.

When they returned to the complainant's home, all of the children were sleeping soundly in the living room. However, minutes later, Samantha's trip to the bathroom was interrupted when she looked through the complainant's open bedroom door and saw defendant inside. She screamed, and Jordan and Stacy rushed to the bedroom. Jordan and Samantha both testified that they saw defendant lying on top of or next to the complainant with his pants pulled down and his genitals between the complainant's legs while making a thrusting motion. The complainant's underwear had been removed and was lying on the floor. They pulled defendant away from the complainant and into the living room, where a physical altercation ensued. The fight was underway when the complainant awoke and emerged from the bedroom. During the altercation, Samantha and Jordan removed defendant's clothing, intending to preserve evidence of his DNA. Defendant ultimately left the house naked, and the police were called.

Defendant testified on his own behalf at trial and maintained his innocence. He indicated that Jordan had stopped him while he was at the party store and asked him to find some cocaine. Defendant brought cocaine back to Samantha at the complainant's house and stayed with the group for a few hours while she used it. According to defendant, they went to his acquaintance's house later that evening to acquire more cocaine at Samantha's request and returned to the complainant's home together. Once there, Samantha demanded her money back for the first batch of "bad" cocaine, and defendant refused. Subsequently, the group physically attacked him and stole his clothes, so he threatened them with future violence. He then fled after Samantha told him to leave.

At trial, his defense theory was that Samantha and Jordan were fabricating the sexual assault in order to protect themselves from defendant's violent threats. Additionally, he claimed that he never returned to the complainant's home on his own and was never inside the complainant's bedroom.

II. DUE DILIGENCE IN LOCATING AN ENDORSED RES GESTAE WITNESS

Defendant argues that the trial court erred in finding that the prosecution exercised due diligence to procure Samantha's presence at trial. Samantha was a res gestae witness[1] who was endorsed on the prosecution's witness list. We disagree with the defendant.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

"Because a finding of due diligence is a finding of fact, this Court will not set it aside absent clear error." *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995), citing MCR 2.613. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (quotation marks and citation omitted).

Under MCL 767.40a, the prosecution has an ongoing duty to advise the defense of all witnesses it intends to call at trial. *People v Canales*, 243 Mich App 571, 577; 624 NW2d 439 (2000). "A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). The prosecution may be relieved of this duty if it shows that the witness could not be produced despite an exercise of due diligence. *Canales*, 243 Mich App at 577. "Due diligence" is the attempt to do everything reasonable to obtain the presence of a witness, not everything possible. *Eccles*, 260 Mich App at 391, citing *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). Likewise, "[t]he test for due diligence is whether good-faith efforts were made to procure the testimony of the witness, not whether increased efforts would have produced it." *People v Watkins*, 209 Mich App 1, 4; 530 NW2d 111 (1995).

## B. APPLICATION

Samantha was undisputedly a res gestae witness, and the prosecution specifically endorsed her on its witness list. Therefore, the prosecution was obliged to produce her at trial unless it could show that it exercised due diligence in its attempts to procure her testimony. *Eccles*, 260 Mich App at 388; *Canales*, 243 Mich App at 577. Based on the facts and circumstances presented here, we are not definitely and firmly convinced that the trial court made a mistake when it determined that the prosecution exercised due diligence. See *Brooks*, 304 Mich App at 319-320.

---

[1] A res gestae witness is defined as follows:

A res gestae witness is one who is present at the scene of the alleged crime, at the time of the alleged crime, or one who had occasion to observe the surrounding events and circumstances. This includes those who were eyewitnesses to some event in the continuum of the criminal act and whose testimony will aid in the full disclosure of facts surrounding the alleged commission of the crime. [*People v Dyer*, 425 Mich 572, 578 n 4; 390 NW2d 645 (1986); see also *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001).]

The prosecutor, officer in charge, and investigator for the Wayne County Prosecutor's Office testified regarding the numerous attempts that were made to locate Samantha. The prosecutor called each telephone number available for Samantha, discovering that all were disconnected except for a phone that Samantha had given to Jordan. Police officers searched for possible addresses using two separate law enforcement databases, visited several different residences, and questioned at least three individuals who knew Samantha—including Samantha's son, Jordan—about Samantha's whereabouts. None of them knew Samantha's whereabouts, and Jordan did not know how to find his homeless mother. Jordan offered to assist by attempting to communicate with her using Facebook, but Samantha did not respond to Jordan's repeated attempts to contact her. Efforts to locate Samantha at local morgues, jails, and hospitals failed. The officers continued to seek out Samantha even after discovering that she was homeless and transient, attempting to reach her by phone at multiple auction houses in Pontiac after learning through her son's trial testimony that she may be working at one of those locations.

Contrary to defendant's claim on appeal, the fact that the prosecutor and police officers began searching for Samantha only two weeks before trial does not make their efforts insufficient, especially given the prosecutor's testimony that she printed subpoenas and sought the officers' assistance in locating Samantha immediately upon her assignment to the case. The record indicates that Samantha's living arrangements were unstable and ever-changing, and it does not seem likely that any earlier efforts would have been more fruitful, especially given Jordan's testimony that he had not seen his mother in the two months before the trial and had only talked to her "every once in a while." Indeed, even Jordan's attempts to reach his mother had failed. Additionally, there is no indication that the prosecution encountered difficulty in securing Samantha's presence prior to the preliminary examination, such that it would have expected that earlier or more intensive efforts were required. Cf. *Watkins*, 209 Mich App at 4.

We recognize that the prosecution may have pursued additional avenues in attempting to locate Samantha. However, again, "due diligence" is the attempt to do everything *reasonable* to obtain the presence of a witness, not everything possible. *Eccles*, 260 Mich App at 388 (emphasis added). The trial court considered the facts and circumstances as they existed in this case and determined that the prosecution had done everything reasonable to locate Samantha. See *Eccles*, 260 Mich App at 391. Likewise, we conclude that the trial court's finding of due diligence was not clearly erroneous in the instant case. See *Brooks*, 304 Mich App at 319-320; *Briseno*, 211 Mich App at 14.

### III. ADMISSION OF PRELIMINARY EXAMINATION TESTIMONY

Defendant also argues that the trial court erred in finding that the prosecution exercised due diligence in its attempts to locate Samantha for purposes of admitting her preliminary examination testimony under MRE 804(b)(1), and that the prosecution's presentation of Samantha's preliminary examination testimony at trial deprived him of his constitutional right of confrontation. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

As stated *supra*, this Court will not set aside a finding of due diligence absent clear error. *Briseno*, 211 Mich App at 14, citing MCR 2.613. "In general, we review for an abuse of

discretion a circuit court's decision concerning the admission of evidence. . . . [However], whether the admission of evidence would violate a defendant's constitutional right of confrontation is a question of law that we review de novo." *People v Dinardo*, 290 Mich App 280, 287; 801 NW2d 73 (2010) (citations omitted). Additionally, "[w]e review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI; see also Const 1963, art 1, § 20. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (quotation marks and citation omitted). Generally speaking, the Confrontation Clause bars the admission of a witness's testimonial statements if the witness does not appear at trial unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Statements made during a preliminary examination are testimonial and implicate the Confrontation Clause. *Id.* at 68.

Although demeanor evidence is important, the substantive use of preliminary examination testimony at trial does not violate a defendant's right of confrontation if the prosecution exercised due diligence to produce the absent witness and the testimony includes satisfactory indicia of reliability. *People v Bean*, 457 Mich 677, 682-683; 580 NW2d 390 (1998). Likewise, a trial court may admit former testimony "at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009), citing *Crawford*, 541 US 36. In particular, MRE 804(b)(1) provides that an unavailable witness's prior testimony is admissible at trial "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

MRE 804(a)(5) provides that a declarant is unavailable for purposes of MRE 804(b)(1) when the declarant "is absent from the hearing and the proponent of his statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(b)(1) is a hearsay exception, a rule of evidence separate and distinct from MCL 767.40a(3), but the test for determining due diligence in the context of MCL 767.40a(3) is nearly identical to that employed for purposes of MRE 804(a)(5). In determining whether due diligence has been shown, a prosecutor's efforts to secure a witness must be considered in light of "the facts and circumstances of [the] case." *Bean*, 457 Mich at 684. The test, being one of reasonableness, is "whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.*; see also *People v James*, 192 Mich App 568, 571; 481 NW2d 715 (1992).

For purposes of MRE 804(b)(1), "[w]hether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). This Court has identified the following factors in determining whether a party had a similar motive to examine a witness at a prior proceeding:

(1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. at 278 (quotation marks omitted).]

The right to cross-examination is not without limits, and a defendant does not have "an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). However, a defendant is "guaranteed a reasonable opportunity to test the truth of a witness' testimony." *Id*.

## B. APPLICATION

For the same reasons as those discussed *supra*, we conclude that the trial court did not clearly err in finding that the prosecution exercised due diligence in attempting to procure Samantha's presence at trial. See MRE 804(a)(5). Thus, given this conclusion that Samantha qualified as an unavailable witness for purposes of MRE 804(b)(1), the trial court's decision to admit Samantha's preliminary examination testimony was not an abuse of discretion and did not violate defendant's right of confrontation.

At trial, the prosecution sought to introduce Samantha's sworn testimony from the preliminary examination, at which defendant's previous attorney was given the opportunity to cross-examine her. Notably, defendant's trial counsel admitted, despite objecting to the admission of Samantha's previous testimony, that prior counsel had cross-examined Samantha and "did a very good job." Likewise, the record shows that prior counsel extensively cross-examined Samantha on a wide range of subjects at the preliminary examination, including the particular individuals present on the night of the offense, how Samantha met defendant, how long defendant was present at the complainant's home, the type and amount of alcohol that Samantha consumed and Samantha's level of intoxication throughout the evening, the complainant's demeanor during the events, whether Samantha previously knew the neighbor before defendant took the group to the neighbor's house, the circumstances and duration of their visit at the neighbor's house, and the specific circumstances of the sexual assault when Samantha returned home. Defense counsel then recross-examined Samantha regarding her failure to lock the front door of the complainant's house when they went to the neighbor's house. The fact that defendant's trial counsel may have posed different questions than those raised at the preliminary examination does not negate the fact that defendant had the opportunity to effectively cross-examine Samantha at the preliminary examination, at which time he had a motive similar to that at trial,[2] thereby fulfilling the requirements of MRE 804(b)(1).

---

[2] Although different burdens of proof apply at the preliminary examination and trial stages, the defense had a similar motive to cross-examine Samantha at the preliminary examination because the prosecution presented her testimony for the same reason as it did at trial—to show that defendant committed the charged offenses. Likewise, the purpose of the preliminary

As such, defendant has failed to establish that he lacked a reasonable opportunity to test the truth of Thornton's testimony. See *Adamski*, 198 Mich App at 138. In addition, the speculative assertions raised by defendant on appeal regarding the believability of Samantha's testimony and the purported reasons for Samantha's failure to appear at trial do not undermine the fact that defendant's right of confrontation was not violated here given his previous opportunity to effectively cross-examine Samantha. See MRE 804(b)(1); *Bean*, 457 Mich at 682-683; *Garland*, 286 Mich App at 7.

Furthermore, defendant argues that the admission of Samantha's preliminary examination testimony violated his right of confrontation because the fact-finder was unable to evaluate Samantha's demeanor and appearance at trial in order to assess her credibility. Again, while we recognize the importance of a witness's demeanor, the admission of preliminary examination testimony at trial does not violate the Confrontation Clause if the prosecution exercised due diligence to produce the absent witness at trial and the testimony includes satisfactory indicia of reliability, which is accomplished though the fulfillment of MRE 804(b)(1). See *Bean*, 457 Mich at 682-683. Additionally, defendant fails to recognize that the Confrontation Clause only guarantees a defendant an opportunity for effective cross-examination. It does not require "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988).

Thus, we conclude that the requirements of MRE 804(b)(1) have been fulfilled in this case, and "[b]ecause MRE 804(b)(1) is a hearsay exception firmly rooted in American jurisprudence," compliance with the rule in admitting Samantha's former testimony met the requirements of the Confrontation Clause. *People v Adams*, 233 Mich App 652, 659-660; 592 NW2d 794 (1999), citing *People v Meredith*, 459 Mich 62, 67-71; 586 NW2d 538 (1998).

## IV. INACCURATE STATEMENTS IN PRESENTENCE INVESTIGATION REPORT

Next, defendant argues that inaccurate information in his PSIR should be corrected to reflect the testimony of the witnesses presented at trial and the trial court's findings of fact. Specifically, defendant objects to two statements contained in the section of the PSIR describing the offense. First, defendant asserts that the statement that "defendant was at [the complainant's] home for some time and then asked all the witnesses to go with him to another house" is inaccurate because (1) the statement implies that defendant "lured" the witnesses from their home, (2) the statement directly contradicts Jordan's statement that it was his mother's idea to leave and go to the neighbor's house, and (3) the trial court specifically found during its scoring of offense variable ("OV") 10[3] that defendant did not lure anyone away to the neighbor's home.

---

examination was "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986) (quotation marks and citation omitted).

[3] OV 10 pertains to the "exploitation of a vulnerable victim." MCL 777.40(1). Fifteen points are assessed when "[p]redatory conduct was involved," and five points are assessed when "[t]he offender . . . exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(1)(a), (c).

Second, defendant argues that the statement that Jordan and Samantha "observed that [defendant] was having penis to vagina sex with [the complainant]" is inaccurate because the trial judge expressly stated, in scoring OV 11[4] at sentencing, that he was not convinced that actual penetration was supported by a preponderance of the evidence in the record.

Defendant's express approval of the information in the PSIR at sentencing waived any claim of error. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Nevertheless, in light of (1) the fact that the prosecution "do[es] not oppose defendant's ministerial request," (2) the trial court's factual findings at trial and sentencing, and (3) the fact that the trial court did not consider the contested information in the PSIR when it sentenced defendant, we will remand for the ministerial task of striking the statements challenged by defendant and forwarding an updated copy of defendant's PSIR to the Michigan Department of Corrections ("MDOC"). See *People v Uphaus*, 278 Mich App 174, 182; 748 NW2d 899 (2008) ("[C]ritical decisions are made by the Department of Corrections regarding a defendant's status based on the information contained in the presentence investigation report. Accordingly, the PSIR should accurately reflect any determination the sentencing judge has made concerning the accuracy or relevancy of the information contained in the report." [Quotation marks and citations omitted.]); *People v Spanke*, 254 Mich App 642, 648-650; 658 NW2d 504 (2003).

## V.  SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues in his brief filed *in propria persona* pursuant to Administrative Order 2004-6, Standard 4, that insufficient evidence was presented at trial to support his first-degree home invasion and CSC 2 convictions. We disagree.

## A.  STANDARD OF REVIEW AND APPLICABLE LAW

We review challenges to the sufficiency of evidence *de novo* following a bench trial. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474. "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). We resolve all conflicts in the evidence in favor of the prosecution and will not interfere with the trier of fact's "determinations regarding the weight of evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

## B.  APPLICATION

---

[4] OV 11 pertains to "criminal sexual penetration." MCL 777.41(1). Twenty-five points are assessed when "[o]ne criminal sexual penetration occurred" during the course of an offense. MCL 777.41(1)(b).

First, the record includes sufficient evidence to support defendant's first-degree home invasion conviction. The prosecution can support a conviction of first-degree home invasion with proof beyond a reasonable doubt that defendant (1) entered a dwelling without permission and (2) committed a felony therein (3) while another person was lawfully inside the dwelling. MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). On appeal, defendant only contests the first element, *i.e.*, whether he entered the dwelling without permission.

Defendant argues that he was an invited guest at the complainant's home and that he never forced his way into the dwelling, noting that a police officer who testified at trial indicated that there was no evidence of forced entry after the incident. Consistent with the claim, defendant testified at trial that he returned to the complainant's home after the group went to the neighbor's house together, accompanying them back inside the dwelling as their guest. Defendant argues that he never reentered the home alone and never saw the inside of the complainant's bedroom that evening.

However, Samantha and Jordan both testified that they noticed defendant's absence at the neighbor's party, and that Samantha was the first to discover defendant in the complainant's bedroom when they returned home. Additionally, they both testified that no one had given defendant permission to reenter the complainant's home on his own later that evening. Likewise, the testimony clearly indicated that the complainant was not conscious to grant defendant permission to reenter her home or enter her bedroom. We are required to consider the evidence in the light most favorable to the prosecution and to resolve all conflicts in the evidence in favor of the prosecution. *Unger*, 278 Mich App at 222. Likewise, we may not disturb the trial court's credibility determinations on appeal. *Id*.

Thus, despite defendant's claims, the testimony presented at trial is sufficient to support the trial court's finding that defendant entered the complainant's home without permission and, therefore, committed first-degree home invasion. See MCL 750.110a(2); *Wilder*, 485 Mich at 43.

Additionally, sufficient evidence was presented at trial to support defendant's CSC 2 conviction. CSC 2 is established when the defendant engaged in sexual contact with another person under circumstances involving the commission of any felony other than the criminal sexual conduct itself. MCL 750.520c(1)(c); *People v Ward*, 206 Mich App 38, 40-41; 520 NW2d 363 (1994). Here, defendant's contemporaneous commission of first-degree home invasion while he was engaged in the sexual contact satisfies the requirement that the sexual contact occur during the commission of a separate felony.

"Sexual contact" for purposes of MCL 750.520c(1)(c) includes "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for [one of the listed purposes.]" MCL 750.520a(q). Despite defendant's repeated denial of having any contact, physical or otherwise, with the complainant on the evening of the incident, Jordan and Samantha both testified that they saw defendant laying on top of or next to the complainant in the complainant's bed. Defendant's

pants were pulled down, and he was touching the complainant's intimate parts with his genitals. The trial judge specifically found Samantha's and Jordan's version of events to be credible. See *Unger*, 278 Mich App at 222. Given this finding, the trial judge certainly could have inferred that defendant touched the complainant's intimate parts with his genitals for sexual arousal or gratification. See *Williams*, 268 Mich App at 419 (stating that "[c]ircumstantial evidence and reasonable inferences that arise from such evidence" can constitute sufficient evidence of the elements of a crime).

Therefore, viewed in the light most favorable to the prosecution, there was sufficient evidence to support defendant's CSC 2 and first-degree home invasion convictions. See *Lanzo Const Co*, 272 Mich App at 473.

## VI. CONCLUSION

Apart from the factual inaccuracies in the PSIR, defendant has failed to establish that any of the claims of error raised in his brief on appeal and his Standard 4 brief warrant relief.

Affirmed, but remanded to the trial court for the ministerial purpose of correcting the PSIR and forwarding a copy to the MDOC. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Michael J. Riordan