# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 14, 2017

Plaintiff-Appellee,

v

No. 332090
Wayne Circuit Court

BOBBY FOMBY,

LC No. 15-007865-01-FC

Defendant-Appellant.

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree arson, MCL 750.73(1), and placing an offensive substance with intent to injure or cause property damage, MCL 750.209(1)(b). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to prison terms of 15 to 30 years for each conviction, to be served concurrently. We affirm.

On May 18, 2015, at about 3:00 a.m., a Molotov cocktail was thrown through a window at defendant's sister's house. Defendant had attended a baby shower at the home the day before, and an argument erupted among several people. Defendant had become enraged when he thought that other shower attendees had hidden his gun. According to witnesses, defendant flipped over a grill, kicked tent stakes, broke a kitchen window, and became involved in a physical altercation with his nephew, Thomale Forris. Defendant's niece, Elontana Embry, in whose honor the shower was held, testified that defendant told her that she and her baby would die that night, and that he would burn down the house.

That night, at approximately 3:00 a.m., the home's seven occupants were awakened by a fire inside the home. Elontana and Thomale both testified that, after they escaped the burning home, they saw defendant riding away from the scene on his moped. Thomale also testified that he overheard a telephone conversation the next day in which defendant stated, "That's why I blew up your house." Defendant's sister, Elaine Embry, similarly testified that she spoke to defendant the day after the fire and he essentially admitted that he had started the fire.

Debris samples removed from the fire scene tested positive for gasoline. Fire Lieutenant Joseph Crandall testified that he investigated the fire and determined that it began in the living room when a Molotov cocktail was thrown through a window.

-1-

# I. MOTIONS FOR A MISTRIAL

On appeal, defendant argues that the trial court abused its discretion by failing to grant a mistrial on two occasions. We disagree.

"A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (internal quotation marks and citation omitted). We review for an abuse of discretion a trial court's decision on a motion for a mistrial. *Id*. An abuse of discretion occurs if the trial court chooses an outcome that is outside the range of principled outcomes. *Id*.

The first incident about which defendant complains occurred on the third day of trial outside the presence of the jury. Defense counsel reported to the trial court that at the end of the previous day, he observed Juror 6 exchange remarks with a witness. The juror had asked the witness if it had been a long day, and the witness responded affirmatively. The trial court questioned the juror, who acknowledged the "long day" remark, but said the conversation would not affect his ability to be fair. The trial court denied the motion for a mistrial, finding that defendant had not shown prejudice and that the juror's assertion that he could be fair was sufficient.

The trial court did not abuse its discretion by denying defendant's motion for a mistrial after a juror had contact with a witness. Error requiring reversal cannot be presumed simply because a juror was exposed to remarks from other persons. *People v Nick*, 360 Mich 219, 227; 103 NW2d 435 (1960). In *People v Schram*, 378 Mich 145, 160-161; 142 NW2d 662 (1966), our Supreme Court affirmed the defendant's conviction even after two jurors acknowledged speaking to the prosecutor about matters unrelated to the proofs in the case. In the instant case, no evidence showed that the juror and the witness spoke about any matter related to the trial. The juror acknowledged the conversation with a witness, in which the juror merely asked the witness if it had been a long day, and the juror stated that the brief conversation did not affect his ability to render a fair verdict. Under these circumstances, prejudice cannot be presumed and the trial court's decision denying the motion for mistrial was not outside the range of principled outcomes. See *Nick*, 360 Mich at 227; *Schaw*, 288 Mich App at 236.

The second incident about which defendant complains occurred after Elaine Embry testified that her mother and her sister had asked her not to appear in court because her absence could benefit defendant. The trial court excused the jury and informed the prosecutor that it did not view the testimony as demonstrating the existence of a threat to the witness. Defense counsel moved for a mistrial on the ground that the jury had heard prejudicial and irrelevant testimony. The trial court agreed to strike the testimony, but declined to grant a mistrial. When the jury returned, the trial court instructed it to disregard Elaine's testimony regarding the requests from family members.

The trial court also did not abuse its discretion by denying defendant's motion for a mistrial after Elaine testified that family members had asked her not to appear in court. Earlier in the trial, Elaine had been allowed to identify voices on a recording of a jail telephone call as those of defendant and their mother. During the call, defendant told their mother to make sure

that others did not appear in court. Thus, the jury already knew that defendant had urged his mother to pass the word that he did not want other family members to appear in court. Moreover, the trial court instructed the jury to disregard the subsequent testimony that Elaine gave regarding statements made to her by other family members. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Because the trial court struck the testimony and the court's instruction to disregard the testimony was sufficient to cure any prejudice stemming from the stricken testimony, the trial court did not abuse its discretion by denying defendant's motion for a mistrial based on this incident. See *Schaw*, 288 Mich App at 236.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that a new trial is required because defense counsel was ineffective for failing to prepare for trial and call witnesses, and for failing to obtain telephone records requested by defendant. We disagree.

To establish an ineffective assistance of counsel claim, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's error, the result would have been different. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Counsel is presumed to have afforded effective assistance, and the defendant bears the heavy burden of proving otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Trial counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). The failure to make an adequate investigation constitutes ineffective assistance if it undermines confidence in the verdict. *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Decisions regarding what evidence to present and whether to call witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The failure to call witnesses constitutes ineffective assistance only if it deprives the defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

Defendant argues that trial counsel should have conducted a better investigation of the case and called witnesses, and obtained telephone records to support his claim of innocence. But defendant provides no specifics to support his allegation that counsel's investigation was inadequate. Defendant does not identify any persons whom he claims should have been called as witnesses on his behalf and does not state what testimony any such persons could have provided. Similarly, he asserts that telephone records "would contain exculpatory or impeaching evidence," but he does not explain what telephone records might exist, how such records could have been favorable or exculpatory, or what testimony they could have impeached. At one point in the proceedings, defendant sought to assert an alibi, but his would-be alibi witness, Jennifer Gordon, was called by the prosecution and testified that she was not with defendant on the night the fire occurred, and she refused defendant's request to provide a false alibi. Trial counsel's failure to present perjured testimony does not constitute ineffective assistance. *People v LaVearn*, 448 Mich 207, 217-218; 528 NW2d 721 (1995). In denying defendant's motion for a

new trial, the trial court found that the phone records to which defendant referred did not exist. Defendant has not presented any evidence showing otherwise. We cannot conclude that trial counsel's failure to call unnamed witnesses and to obtain telephone records the trial court found did not exist in the form defendant claimed fell below an objective standard of reasonableness. Accordingly, defendant has not overcome the presumption that counsel rendered effective assistance. See *Rockey*, 237 Mich App at 76.

## III. EXCLUSION OF IMPEACHMENT EVIDENCE

Next, defendant argues that the trial court erred or abused its discretion when it declined to allow Lieutenant Crandall to testify regarding a statement given by Nichole Nichols. At the time the fire occurred, Nichols made a statement in which she did not identify defendant as the perpetrator of the fire. At trial, defendant was allowed to question Nichols regarding her statement, but she testified that she did not remember saying anything recorded in the statement. Defendant sought to also question Crandall about Nichols's statement as a prior inconsistent statement, but the trial court did not allow Crandall to testify regarding Nichols's statement on the ground that Nichols had testified that she could not recall making the statement. Defendant asserts that the trial court erred by not allowing Crandall's testimony. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010) (citation omitted). Any preliminary question of law, such as whether admission of evidence is precluded by a rule of evidence, is reviewed de novo. *Id.*

Defendant argues that Crandall's testimony regarding Nichol's statement was admissible to impeach Nichols under MRE 613, MRE 801(d), or MRE 803(5). We address each claim in turn.

First, MRE 613 provides:

> **(a) Examining Witness Concerning Prior Statement.** In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

> **(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

MRE 613 does not apply under the circumstances of this case. This rule applies when a party seeks to impeach a witness with the witness's own prior inconsistent statement. See *People v Rodriguez*, 251 Mich App 10, 34-35; 650 NW2d 96 (2002). Here, defense counsel questioned Nichols about her statement, and then sought to have Crandall testify about Nichols's statement. Crandall could not do so under MRE 613 because the statement was not his own.

Second, MRE 801(d) provides:

A statement is not hearsay if—

(1) *Prior Statement of Witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person[.]

MRE 801(d) does not apply under the circumstances of this case. Defense counsel did not seek to cross-examine Crandall regarding Crandall's own prior statement.

Third, MRE 803(5) establishes an exception to the prohibition against hearsay for a recorded recollection as follows:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

A document may be admitted as a recorded recollection under MRE 803(5) if it meets the following requirements:

"(1) The document must pertain to matters about which the declarant once had knowledge; (2) [t]he declarant must now have an insufficient recollection as to such matters; [and] (3) [t]he document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory." [*People v Dinardo*, 290 Mich App 280, 293; 801 NW2d 73 (2010), quoting *People v Daniels*, 192 Mich App 658, 667-668; 482 NW2d 176 (1992) (citation omitted).]

But Crandall did not make the statement in question, and did not profess to have a loss of memory about the subject of the statement. Defendant does not explain how defense counsel could have questioned Crandall about the statement under these circumstances.

Nichols testified that she remembered making a statement, but did not remember what she said. She examined her written statement, but it did not refresh her memory. Defense counsel did not ask Nichols to read the statement into evidence, but the trial court allowed defense counsel, over the prosecutor's objection, to go through the statement sentence by sentence and ask Nichols if she remembered making each comment. She replied that she did not remember doing so. Thus, defense counsel got the substance of Nichols's remarks in the

-5-

statement to the jury, albeit in a somewhat irregular manner. No error or abuse of discretion occurred.

## IV. SENTENCING

Finally, defendant challenges the trial court's scoring of several offense variables. The trial court's factual determinations supporting the scoring of an offense variable (OV) must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The interpretation and application of the sentencing guidelines raise legal issues that this Court reviews de novo. *Id.*

Defendant argues that the trial court erred in scoring OV 1 and OV 2 at 20 and 15 points, respectively, because the occupants of the house were not exposed to the use of a weapon, and the Molotov cocktail was not used against any person in the house. We disagree.

The scoring of OV 1 pertains to the aggravated use of a weapon, MCL 777.31, and provides for the scoring of 20 points when the victim was subjected or exposed to an "incendiary device," MCL 777.31(1)(b). An "incendiary device" is defined as including a Molotov cocktail, MCL 777.31(3)(b). The scoring of OV 2 pertains to the lethal potential of the weapon used. MCL 777.32. It provides for the scoring of 15 points if the offender used an incendiary device, MCL 777.32(1)(b) which, again, is defined as including a Molotov cocktail, MCL 777.32(3)(d).

The trial court correctly scored OV 1 and OV 2 at 20 and 15 points, respectively. The Molotov cocktail is considered an "incendiary device" in both OVs. MCL 777.31(3)(b); MCL 777.32(3)(d). The Molotov cocktail may not have been thrown directly at the occupants of the house, but those persons, as occupants of that house, were exposed to the smoke and flames that resulted from the explosion. Defendant's reliance on *People v Ball*, 297 Mich App 121; 823 NW2d 150 (2012), for his assertion that the Molotov cocktail should not be considered a weapon is misplaced. In *Ball*, the defendant traded heroin for a video game, and the victim overdosed and died. *Id*. at 122. The defendant pleaded guilty of manslaughter. *Id*. The trial court scored OV 1 at 20 points, reasoning that the heroin constituted a "chemical substance" to which the defendant exposed the victim. *Id*. at 123. The *Ball* Court reversed the scoring of 20 points for OV 1, finding that no evidence showed that the defendant used the heroin as a weapon to attack the victim and expose him to heroin against his will. *Id*. at 125-126. In this case, the evidence showed that defendant used the Molotov cocktail as a weapon to expose the occupants of the house to fire and smoke against their will. Moreover, plainly, fire and smoke can be lethal. The trial court did not clearly err in scoring OV 1 and OV 2 at 20 points and 15 points, respectively. See *Hardy*, 494 Mich at 438.

Defendant argues that the trial court erred in assessing 10 points for OV 9 and five points for OV 10 because the occupants of the home were not placed in danger by the use of the Molotov cocktail. He asserts that the weapon was not intended to harm the victims, but rather to burn the property. He contends that if the evidence showed that he intended to harm the occupants, the jury would have convicted him of seven counts of assault with intent to commit murder. We again reject defendant's scoring challenges.

The scoring of OV 9 addresses the number of victims, MCL 777.39(1), and provides for the scoring of 10 points if "[t]here were 2-9 victims who were placed in danger of physical injury

or death . . . ." MCL 777.39(1)(c). The scoring of OV 10 addresses the exploitation of a vulnerable victim, MCL 777.40(1), and provides for the scoring of five points if the victim was exploited when asleep. MCL 777.40(1)(c).

The trial court correctly scored OV 9 at 10 points. The fact that no victim was actually harmed by smoke or flames is irrelevant. "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462, vacated in part on other grounds 495 Mich 876 (2013). In this case, the Molotov cocktail thrown by defendant exploded inside the residence, causing smoke and flames to spread through the house. Regardless of defendant's intent to commit murder, the seven occupants, including a two-year-old child, were placed at risk of death or physical injury from exposure to the smoke and flames. See MCL 777.39(1)(c).

Furthermore, the trial court correctly scored OV 10 at five points based on the evidence that defendant attacked the residence at a time when the occupants would likely be sleeping. Elontana testified that defendant told her that he would burn the house that night and that she would die. This evidence showed that defendant deliberately waited until the occupants would likely be sleeping, when they would be more vulnerable, before he threw the Molotov cocktail into the house. See MCL 777.40(1)(c).

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle