*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RASHED AM BROWN,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 340069
Oakland Circuit Court
LC No. 2016-259631-FC

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for second-degree murder, MCL 750.317; first-degree fleeing and eluding resulting in the death of another individual, MCL 257.602a(5); and second-degree fleeing and eluding resulting in serious impairment of a body function, MCL 750.479a(4)(a). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 100 to 150 years' imprisonment for second-degree murder, and 19 to 60 years' imprisonment for each of his fleeing and eluding convictions. We affirm.

## I. FACTS

Defendant's convictions arise from a car collision that occurred while defendant was fleeing from police. On July 7, 2016, defendant was driving a stolen Suburban SUV with four passengers in his vehicle, Dorien Atkins, T'Aira Moore, Nautica Sharpton, and Quinshawn Lee. Defendant drove to a Walgreen's pharmacy where Sharpton filled a prescription for cough syrup. Defendant then drove to a nearby CVS pharmacy, where Lee went inside and attempted to fill a fraudulent prescription. Earlier that evening, the CVS pharmacy had called police about a fraudulent prescription in Lee's name. When Lee returned to the pharmacy to pick up the prescription, police arrived to arrest Lee for prescription fraud. Defendant, waiting for Lee in the stolen Suburban in the pharmacy parking lot, saw the police officers arrive and drove away at high speed, attracting the attention of the officers.

Deputy Frank McSpadin of the Oakland County Sheriff's Department testified that he saw defendant drive away at an extremely high speed, and therefore followed defendant in a

-1-

marked police car, activating the car's lights and sirens. Defendant's passengers in the Suburban testified that defendant was driving very fast and ran two stoplights, while they screamed and pleaded with him to stop. Defendant continued to flee from the officer at speeds of 85 to 95 miles per hour. Most of the roads they traveled during the chase had speed limits of 40 or 45 miles per hour. During the chase, defendant repeatedly crossed the center line and passed other vehicles despite a solid, yellow center line. A second police car attempted to block the road in front of the Suburban, but defendant swerved around the police car. As the traffic increased, defendant drove onto the shoulder of the road to pass another vehicle on the right. Defendant then ran a third red light, and in doing so collided with a van driven by Reo Dockter. The dash cam video of the police car recorded the entire pursuit, and the recording was later played for the jury.

Dockter, age 75, was transported to the hospital, but died shortly thereafter as a result of multiple injuries caused by the collision. The collision also resulted in serious bodily injury to one of the passengers in defendant's vehicle, Sharpton, who suffered a broken hip requiring surgery, and a broken wrist.

Deputy Michael David of the Oakland County Sheriff's Office testified that, after the Suburban had been turned upright, he found an empty container of prescription promethazine cough syrup in Sharpton's name in one of the door wells of the Suburban, and that the prescription had been filled the day of the accident.

Several days after the collision, defendant was interviewed by police and the recording of the interview was later played for the jury and a transcript of the interview was admitted into evidence. During the interview, defendant admitted that he had been driving the Suburban during the crash and that he had fled from the CVS parking lot when he saw the police. Defendant told police that while in the parking lot waiting for Lee, he saw three police cars arrive and decided to leave in case Lee was doing something "crazy" like robbing the pharmacy. Defendant did not want to become involved, and he thought that if he left the parking lot, the police would not pursue him.

Initially, defendant stated that he did not recall fleeing from police, but later admitted that he remembered the police pursuing him. He told police that the pursuit made him "nervous" and "panicked," and eventually admitted that he may have been driving 80 or 90 miles per hour. Defendant denied running any traffic lights, and stated that he was too nervous to hear what his passengers were saying. However, defendant admitted that he knew the police were "after" him "for something."

The jury found defendant guilty of second-degree murder, first-degree fleeing and eluding causing death, and second-degree fleeing and eluding causing serious bodily injury. The trial court sentenced defendant within the advisory sentencing guideline range, as a fourth-offense habitual offender, to concurrent terms of 100 to 150 years' imprisonment for second-degree murder and 19 to 60 years' imprisonment for each of his fleeing and eluding convictions. Defendant now appeals to this Court as of right.

# I. DISCUSSION

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the prosecutor presented insufficient evidence of malice to support his conviction for second-degree murder. We disagree.

We review de novo a challenge to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution, to determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). In doing so, we resolve all conflicts in the evidence in favor of the prosecution, and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses. *Id.*

The elements of second-degree murder are (1) a death, (2) caused by the defendant's act, (3) with malice, and (4) without justification or excuse. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Malice can be established by demonstrating either the intent to kill, the intent to cause great bodily harm, or the intent to act with wanton and willful disregard of the likelihood that the natural result of the act is death or great bodily harm. *Id.* at 9-10. Willful and wanton disregard requires general intent only, meaning that the prosecution is not required to prove that the defendant intended the harmful result. *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998). Instead, "the intent to do an act in obvious disregard of life-endangering consequences is a malicious intent." *Id.* The elements of the crime may be demonstrated by circumstantial evidence. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant acted with the requisite intent. *Stevens*, 306 Mich App at 629.

In this case, as shown via video from the police dash cam and confirmed by eyewitness testimony, defendant engaged in a high-speed chase with police on roads with substantial traffic. He ignored police lights and sirens instructing him to stop, and instead drove at speeds of approximately 85 to 95 miles per hour on roads with a speed limit of 45 miles per hour or less. He crossed the center line on multiple occasions, recklessly passed vehicles despite a solid center line, and drove onto the shoulder of the road to pass a vehicle on its right. Before the fatal crash, he ran two red lights, nearly hitting other vehicles in one of the intersections. At one point, a police car partially blocked the roadway in an attempt to "channel" defendant's vehicle to a stop, but he swerved around the police car and continued his high-speed flight. Inside the vehicle, defendant ignored his passengers as they screamed at him to stop or slow down. Ultimately, traveling at approximately 83 mph, and without any attempt to brake, defendant ran a third red light and crashed into a van driven by Reo Dockter, causing that man's death.

Defendant's grossly excessive speeds, his disregard for traffic signals and rules of the road, and his attempt to elude the police by driving his vehicle in a dangerous fashion endangered the lives of numerous citizens, police officers, and his passengers. See *People v Vasquez*, 129 Mich App 691, 694; 341 NW2d 873 (1983). Viewed in a light most favorable to the prosecutor, defendant's conduct evinces the intent to act in wanton and willful disregard of the likelihood that the natural tendency of his extremely reckless driving was to cause death or

-3-

great bodily harm. See *Goecke*, 457 Mich at 466. Accordingly, there was sufficient evidence to support a finding of malice and to support defendant's conviction for second-degree murder.

## B. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor engaged in misconduct by arguing facts not in evidence. Specifically, defendant argues that the prosecutor improperly argued that defendant knew he was driving a stolen vehicle which, defendant contends, is unsupported by the record. In his Standard 4 brief,[1] defendant also argues that the prosecutor engaged in misconduct by expressing a personal opinion of defendant's guilt. We disagree.

Defendant's claims of prosecutorial misconduct are unpreserved and reviewed for plain error affecting substantial rights. *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). We will not reverse when a curative instruction could have alleviated any prejudicial effect. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). A prosecutor commits misconduct if he or she abandons his or her responsibility to seek justice and, in doing so, denies the defendant a fair and impartial trial. *Id*. Although prosecutors typically have great latitude regarding their arguments, a prosecutor should refrain from expressing a personal opinion about a defendant's guilt. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). But a prosecutor is free to argue the evidence and all reasonable inferences arising from the evidence as it relates to his or her theory of the case. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

In this case, during closing and rebuttal, the prosecutor argued that defendant was motivated to flee from police because he knew that the Suburban was stolen. Defendant now claims these arguments were factually unsupported because, in his interview with police, defendant denied knowing the Suburban was stolen. However, while defendant may not have directly admitted knowing that the Suburban was stolen, there was ample evidence from which the prosecutor could reasonably argue that defendant knew the vehicle was stolen.[2] The prosecutor did not commit misconduct by arguing the evidence and reasonable inferences as they related to his theory that defendant fled from police because he knew he was driving a stolen vehicle. See *id*.

---

[1] Defendant filed a Standard 4 brief in propria persona in accordance with Administrative Order No. 2004-6.

[2] Specifically, defendant claimed to have borrowed the vehicle from a deceased individual while his own car was being repaired, but there were numerous discrepancies in defendant's claim. Police could not find the repair shop that defendant described, nor could they find anyone matching the description of the people named by defendant as having loaned him the car, or any evidence of the car defendant claimed he was having repaired. Moreover, the vehicle had dealer plates even though the car had been in defendant's possession for an extended period; the car lacked registration and proof of insurance information; and defendant conceded in his interview with police that it made "sense" that the vehicle was stolen.

-4-

Further, the prosecutor did not express a personal opinion of defendant's guilt. Instead, the prosecutor urged the jury to look at the evidence and to convict because the evidence established that defendant was guilty. This was not misconduct. See *Lane*, 308 Mich App at 65. Defendant was not denied a fair trial, particularly when the trial court instructed the jurors that they alone decided the facts of the case, that they must decide the case based on the evidence, and that the lawyers' arguments were not evidence. See *id*.

## C. OPINION TESTIMONY

Defendant next contends that he is entitled to a new trial because Deputy Michael David testified that defendant was the "bad guy" in the police chase, thereby providing improper opinion testimony regarding defendant's guilt. We disagree.

A witness in a criminal trial is not permitted to opine about a defendant's guilt or innocence. *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). Contrary to defendant's assertion, however, Deputy David in this case did not offer an opinion on whether defendant was guilty. At trial, over the prosecution's objection, defense counsel cross-examined David on whether, in his opinion, Deputy McSpadin's failure to stop the police pursuit of defendant was the cause of the collision. In responding to defense counsel's questions, David generally referred to a driver fleeing from police as "the bad guy." In embarking upon this line of questioning, defense counsel created the possibility that the witness would place the blame on defendant rather than police. See *People v Beckley*, 434 Mich 691, 731; 456 NW2d 391 (1990). Further, David used the term "bad guy" generically to describe any individual fleeing from police; to the extent the witness ultimately opined that defendant was the "bad guy" in this police chase, he did not offer an opinion on defendant's guilt or innocence.

To the extent the prosecutor followed up on this line of questioning during redirect, there was no error because defendant's questioning of David invited a response from the prosecutor. See *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003). Having opened the door to Deputy David's opinion regarding whether the police were at fault for the collision, defendant cannot now complain that the witness described a driver fleeing from police as the "bad guy" in the police chase. To conclude otherwise would allow defendant to challenge his conviction based upon opinion testimony that defendant solicited over objection from the prosecutor. See *Beckley*, 434 Mich at 731. Thus, defendant is not entitled to relief on appeal because any prejudice flowing from Deputy David's opinions was of defendant's own making.

We also observe that defendant's claim is unpreserved, and that he has failed to show that the alleged error was outcome-determinative in light of the overwhelming evidence of defendant's guilt. See *People v Houston*, 261 Mich App 463, 466; 683 NW2d 192 (2004). The evidence of defendant's guilt was substantial. The life-endangering flight from police was recorded and the video played for the jury, and there is no question that defendant was the driver who killed Dockter. On this record, the use of the term "bad guy" at trial was not outcome-determinative, and defendant is not entitled to relief on appeal.

## D. SENTENCING

In his appellate brief and his Standard 4 brief, defendant contends that he is entitled to resentencing because the trial court erred by assigning 15 points to offense variable (OV) 5. Initially, we note that defendant waived his challenge to the scoring of OV 5 by expressly agreeing that the guidelines were "scored accurately." See *People v Biddles*, 316 Mich App 148, 166; 896 NW2d 461 (2016). However, defendant also argues that defense counsel provided ineffective assistance by failing to object to the scoring of OV 5. Considering defendant's scoring challenge in the context of his claim of ineffective assistance of counsel, we conclude that defendant is not entitled to relief because OV 5 was properly scored and any objection by defense counsel therefore would have been futile.

When a homicide or homicide-related crime causes psychological injury to a member of the victim's family, OV 5 is scored. *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). Under MCL 777.35(1)(a), 15 points must be assessed when "[s]erious psychological injury requiring professional treatment occurred to a victim's family." "In this context, 'serious' is defined as 'having important or dangerous possible consequences,' " *Calloway*, 500 Mich at 186, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed.), and is not limited to instances in which the victim's family member has sought, or plans to seek, treatment. *Id*. at 188. When calculating the sentencing guidelines, the trial court may consider all the record evidence, including letters submitted to the court for consideration in sentencing. *People v McFarlane*, 325 Mich App 507, 532; 926 NW2d 339 (2018).

In this case, in addition to oral statements by Dockter's wife and brother-in-law, the trial court noted at sentencing that it had received and read letters from family members. Most notably, Dockter's sister submitted a written statement, describing in detail the serious psychological injury she and other family members suffered as a result of Dockter's murder, including grief, anxiety, difficulty sleeping, and feelings of helplessness, hopelessness, anger, sadness, and loneliness. As described in her letter, these psychological injuries were serious and long-lasting, affecting her ability to work, engage in normal activities, and sleep, more than a year after Dockter's death. This evidence provided ample support for the conclusion that members of Dockter's family suffered serious psychological injuries that may require professional treatment. See *Calloway*, 500 Mich at 184-189. Accordingly, OV 5 was properly assigned 15 points. See MCL 777.35(1)(a). Consequently, any objection by counsel to the scoring of OV 5 would have been futile, and counsel cannot be considered ineffective for failing to make a futile objection. See *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010).

## E. INEFFECTIVE ASSISTANCE

In his Standard 4 brief, defendant raises several additional claims of ineffective assistance of counsel, which present a mixed question of fact and constitutional law. See *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). We review a trial court's findings of fact for clear error, while reviewing questions of law de novo. *Id*. at 188. However, when a claim of ineffective assistance of counsel has not been preserved by an evidentiary hearing, our review is limited to mistakes apparent from the lower court record. *Id*.

To establish ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, absent defense counsel's errors, there would have been a different outcome. *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). Defendant has the burden of demonstrating both deficient performance by counsel and prejudice as a result, and thus the defendant necessarily bears the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). We presume that counsel's representation has been effective, and the defendant bears a heavy burden of proving otherwise. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

## 1. FAILURE TO PRESENT A DEFENSE

Defendant argues that defense counsel failed to provide effective assistance because he failed to present the defense of duress. Specifically, defendant contends that defense counsel should have requested jury instructions on duress, investigated defendant's history of battery at the hands of police, and presented expert testimony about post-traumatic stress disorder (PTSD) and "police phobia" to establish that defendant felt compelled to flee from police because he feared for his life. We disagree.

Trial counsel is obligated to prepare, investigate, and present all substantial defenses, which is a defense that might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). An attorney's decision to retain an expert witness is considered a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). We will not second-guess a defense attorney's judgment on matters of trial strategy. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

In this case, defendant claims that his flight from police was justified because he suffered from PTSD and "police phobia" as a result of past violence perpetrated on him by police and his exposure to news stories about violence by police against African-American men. However, the lower court record does not demonstrate—and defendant has not made an offer of proof to establish—that defendant suffered police brutality in the past or that he has been diagnosed with PTSD or police phobia. Defendant has also failed to identify an expert who could have been retained by defense counsel to testify regarding these matters. Absent evidence that defendant had PTSD or police phobia and that an expert could have testified favorably regarding PTSD or police phobia, defendant has not established the factual predicate of his claim, and he has failed to show that retention of a defense expert would have altered the outcome of the proceedings. See *Payne*, 285 Mich App at 190.

Moreover, duress is not a defense to homicide. *Henderson*, 306 Mich App at 5. Thus, even if defendant could demonstrate duress, he would not have been justified in taking the life of an innocent third person. See *id*.; see also *People v Gimotty*, 216 Mich App 254, 257; 549 NW2d 39 (1996) (concluding that duress was not a defense to homicide when a defendant claimed he was forced to flee from police and his reckless driving led to a collision and the death of a child); *People v Moseler*, 202 Mich App 296, 299; 508 NW2d 192 (1993) (stating that duress was not a defense to homicide in a case where the defendant claimed her reckless driving was justified because she was fleeing from her abusive boyfriend).

Additionally, the facts in this case do not support a defense of duress. To maintain a duress defense, a defendant bears the burden of producing some evidence from which the jury could conclude that:

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm. [*Henderson*, 306 Mich App at 4-5 (quotation marks and citation omitted).]

In this case, the evidence at trial showed that the police at CVS did not have their guns drawn, and there was no indication they did anything that could be characterized as "threatening conduct of sufficient magnitude to create fear of death or serious injury in the minds of reasonable persons" as required to show duress. See *Gimotty*, 216 Mich App at 257. Further, there is no indication that defendant actually felt fear of death or serious bodily harm. Defendant never claimed that he acted out of fear of death or serious bodily harm, only that he was "nervous" about being stopped by police. Accordingly, defense counsel did not provide ineffective assistance by failing to pursue expert testimony or request jury instructions on this legally inapplicable and factually unsupported defense.

## 2. FAILURE TO FILE A MOTION TO SUPPRESS

Defendant also argues that defense counsel provided ineffective assistance by failing to file a motion to suppress his statement to police. First, defendant argues that police violated *Miranda*[3] and defendant's constitutional rights by continuing the interview after defendant invoked his right to counsel. Second, defendant argues that his waiver and subsequent statement were involuntary because he was in the hospital and taking pain medication at the time of the police interview. We disagree.

Contrary to defendant's arguments, the record does not demonstrate that he unequivocally invoked his right to counsel, see *People v Tierney*, 266 Mich App 687, 711; 703 NW2d 204 (2005), or that his waiver of his *Miranda* rights and his statement to police were involuntary, see *People v Ryan*, 295 Mich App 388, 397; 819 NW2d 55 (2012). Defense counsel cannot be considered ineffective for failing to file a futile motion to suppress. See *Ericksen*, 288 Mich App at 201. Moreover, even if counsel could have succeeded on a motion to suppress, defendant's claim is one for ineffective assistance of counsel, and he has not overcome the presumption that defense counsel's decision to forgo a motion to suppress was a matter of trial

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

strategy. While defendant incriminated himself during his interview with police, he also made statements that defense counsel may have viewed as beneficial to the defense. For instance, in his interview, defendant denied any involvement in the prescription fraud, he denied knowing that the Suburban was stolen, he claimed that he only left CVS because he did not want to be involved, and he claimed he kept driving simply because he was "nervous." The fact that defendant denied any criminal wrongdoing preceding the chase enabled defense counsel to argue that defendant's flight was innocent and without malicious intent. Accordingly, defendant has not overcome the presumption that defense counsel's decision not to file a motion to suppress was a matter of trial strategy, see *id*., and he has not shown that he was denied the effective assistance of counsel.

## 3. RECORDED RECOLLECTION

In his Standard 4 brief, defendant also challenges the reading into evidence at trial of the transcript of an interview between police and Dorien Atkins, one of the passengers in defendant's vehicle. The trial court allowed the reading of the transcript at trial under MRE 803(5) after Atkins claimed to no longer recall the events of the chase and collision. On appeal, defendant argues that the trial court abused its discretion because MRE 803(5) did not apply, that defense counsel provided ineffective assistance by failing to object, that the prosecutor committed misconduct by introducing the statement, and that the introduction of the statement violated the Confrontation Clause.

Defendant preserved his evidentiary claim by objecting on hearsay grounds and disputing the applicability of MRE 803(5) in the trial court. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). As an evidentiary matter, we are inclined to agree that MRE 803(5) did not apply because Atkins did not make the transcript or adopt the transcript when matters were fresh in his memory. See *People v Dinardo*, 290 Mich App 280, 293; 801 NW2d 73 (2010). Nevertheless, defendant is not entitled to relief on the basis of this evidentiary error because it does not appear more probable than not that admission of Atkins's statement affected the outcome. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). There is no dispute that defendant was the driver of the Suburban who led police on a high-speed chase resulting in Dockter's death. At most, Atkins's statement provided some insight into what occurred inside the vehicle—i.e., the fact that defendant's passengers told him to stop. But, this evidence was cumulative of testimony offered by two other passengers in the vehicle. Given the overwhelming evidence of defendant's guilt, including video evidence and testimony from the other passengers in the vehicle, it is not more probable than not that Atkins's statement to police affected the outcome, and defendant is not entitled to relief on appeal.

To the extent defendant raises a Confrontation Clause challenge, his constitutional argument is unpreserved, and without merit because Atkins testified at trial, and therefore defendant had the opportunity to cross-examine him. See *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001). While defendant emphasizes that Atkins's statement was read *after* Atkins testified, defendant made no request to question Atkins after his statement was read. There is simply no indication that defendant was limited in his ability to cross-examine Atkins at trial, and there is no merit to his assertion that he was denied the opportunity to confront the witnesses against him. To the extent defendant claims that the prosecutor committed misconduct

by reading Atkins's statement at trial, defendant's claim is without merit because "a prosecutor's good-faith effort to admit evidence does not constitute misconduct."

Defendant's ineffective assistance claim relating to Atkins's statement is also without merit. Defense counsel in fact objected to the admission of the statement at trial on hearsay grounds, and counsel is not considered ineffective simply because a tactic proves unsuccessful. See *Solloway*, 316 Mich App at 190. Further, to the extent defense counsel failed to raise a Confrontation Clause argument and elected not to cross-examine Atkins, defendant is not entitled to relief because (1) a Confrontation Clause challenge would have been without merit given that Atkins testified, (2) whether to question Atkins is presumed to be a matter of trial strategy, see *Putman*, 309 Mich App at 248, and (3) defendant has not shown a reasonable probability that cross-examination of Atkins would have affected the outcome of the proceedings. See *Jackson*, 292 Mich App at 600-601.

## F. PRELIMINARY EXAMINATION & BINDOVER

Finally, defendant raises a number of challenges relating to the preliminary examination and bindover. According to defendant, he was deprived of counsel during the preliminary examination, his first trial attorney unilaterally waived his preliminary examination without defendant's consent, he was denied the right to confrontation at the preliminary hearing, there was insufficient evidence to support a bindover on a charge of second-degree murder, the circuit court lacked jurisdiction, and defense counsel provided ineffective assistance by failing to raise these issues in the trial court. These arguments are without merit.

A preliminary examination is a statutory right that may be waived by a defendant. See MCL 767.42(1). Although defendant denies waiving his preliminary hearing, he has not provided this Court with a record to verify the factual basis for his arguments. See *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017). To the contrary, according to the register of actions in the district court, which was filed in the circuit court on August 2, 2016, the preliminary examination was waived, and defendant was bound over on charges of murder and first-degree fleeing and eluding. There is nothing in the record to show that defendant did not waive the preliminary examination or that his waiver was somehow invalid. [4] The register of actions also indicates that, contrary to defendant's claims, he was represented by counsel in the district court. By waiving the preliminary examination, defendant waived the opportunity to confront the witnesses against him or challenge the sufficiency of the evidence at the preliminary examination. Moreover, given that defendant's guilt was established beyond a reasonable doubt at trial, it can only be surmised "that had a preliminary examination been conducted, defendant would have been bound over to circuit court for trial since the lesser standard of probable cause is used at preliminary examination." *People v McGee*, 258 Mich App 683, 698; 672 NW2d 191 (2003).

---

[4] On appeal, the prosecutor provided this Court with a signed waiver of preliminary examination, executed by defendant, his attorney, and the prosecuting attorney.

In short, defendant's challenges to the bindover are without merit, and because there is no factual support for defendant's arguments, defendant's ineffective assistance claims on these grounds are also without merit. See *Carbin*, 463 Mich at 600.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica