*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 28, 2022

Plaintiff-Appellee,

v

No. 353012
Oakland Circuit Court
LC No. 2019-271864-FC

TORRI MONTAGUE DURDEN,

Defendant-Appellant.

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Following a jury trial, defendant Torri Durden was convicted of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1) (multiple variables), and assault by strangulation, MCL 750.84(1)(b). The trial court sentenced Durden as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 18 to 50 years for the CSC-I conviction and 9 to 50 years for the assault conviction. Durden appeals as of right, raising several challenges to his convictions. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND

Durden was convicted of sexually assaulting AW at Durden's apartment on June 23, 2019. Durden met AW on a dating application, they texted for a few weeks, and Durden invited AW to his apartment. AW agreed to meet Durden at his apartment before she went to work on the morning of June 23. AW alleged that while sitting on Durden's bed, Durden began to kiss her, but she told him to stop. Durden asked her "what was the point of coming over if [she] wasn't trying to" have sex with him. AW responded that "just because [she] came over, that didn't mean that [she] wanted to . . . have sex with him." Durden then began to strangle her. AW screamed, and Durden told her to shut up. AW told Durden that she had asthma and couldn't breathe, and he briefly allowed her to get up to use her inhaler. According to AW, Durden then began to again choke her, forcibly held her down, and anally penetrated her without her consent. Before AW left, Durden took a photograph of AW's identification and told her, "If you don't f\*\*k with me, I won't f\*\*k with you."

-1-

After leaving Durden's apartment, AW immediately called her boss and told her boss what happened. AW drove to work, and when she arrived, a coworker took her to the hospital. The hospital could not give AW a proper sexual assault examination, so AW was referred to HAVEN, an organization that offers services for victims of sexual assault. There, AW received a forensic medical examination by a sexual assault nurse examiner (SANE), Katrina Ferris, who observed injuries to AW's anal region consistent with AW's account of the assault. Ferris did not observe any injuries to AW's neck area, but testified that AW complained of other symptoms consistent with strangulation. DNA collected during the examination was consistent with Durden being a contributor. AW attended a follow-up medical examination approximately three weeks later, at which AW disclosed continued symptoms consistent with strangulation.

The prosecution also presented the testimony of KM, who testified that she met Durden on Facebook in 2008, and eventually invited him to her house. According to KM, Durden tried to initiate sexual activity and she told him to stop, but Durden sexually assaulted her. Durden also told KM that he knew where she lived if she told anyone. Durden was later convicted of second-degree criminal sexual conduct in that matter.

Durden now appeals, raising issues through his appointed appellate counsel and in a Standard 4 brief.[1]

## II. BRIEF FILED BY COUNSEL

In the brief filed by Durden's counsel, Durden challenges the admission of photographic evidence, argues the trial court erroneously excluded his proposed character evidence, and claims prosecutorial misconduct during closing arguments. We address each issue in turn.

## A. PHOTOGRAPHIC EVIDENCE

Durden first argues that the trial court erred by admitting photographs of AW taken during a follow-up medical examination. Durden contends that the photographs were not properly authenticated because the nurse who took the photos did not testify at trial. Durden further argues that admission of the photographs violated his Sixth Amendment right of confrontation.

Preliminarily, although Durden preserved the issue that the photographs were not properly authenticated by objecting on this basis at trial, he did not argue that admission of the photographs violated his constitutional right of confrontation. The latter issue is therefore unpreserved. See *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) ("[A]n objection on one ground is insufficient to preserve an appellate argument based on a different ground."). We review a trial court's decision to admit evidence for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Id*. at 722-723. Any preliminary questions of law, including

---

[1] Under Administrative Order No. 2004-6, a "Standard 4 brief" refers to a *pro se* brief filed to raise additional claims on appeal against the advice of counsel. *People v Ryan*, 295 Mich App 388, 392 n 1; 819 NW2d 55 (2012).

questions involving the interpretation of rules of evidence, are reviewed de novo. *Id*. at 723. De novo review means that "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights, meaning that the defendant must show prejudice. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At trial, Ferris testified that when she examined AW on June 23, 2019, she took photographs of AW's injuries, including petechiae in AW's eye,[2] which could be associated with strangulation. Ferris testified that AW attended a follow-up examination, in part to determine whether the petechiae observed on June 23 may have been caused by an injury, or was a natural condition associated with AW. Ferris was not present during the follow-up examination, but photographs of AW taken on that date were included in AW's medical records and did not depict petechiae in AW's eye, which led Ferris to conclude that the petechiae observed on June 23 was an actual injury.

Durden argues that the photographs from AW's follow-up examination were not admissible because the nurse who conducted that examination and took the photographs did not testify at trial, and therefore, the photographs could not be authenticated. The trial court disagreed because it determined that the photographs were part of AW's medical records, which were self-authenticating under MRE 902(11).

MRE 901(a) provides that as a condition precedent to the admission of evidence, the evidence must be authenticated. Authentication requires the proponent—the party introducing the evidence—to produce "evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). Under MRE 902, however, some types of evidence may be treated as self-authenticating. MRE 902 provides, in pertinent part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> * * *
>
> (11) Certified Records of Regularly Conducted Activity. The original or a duplicate of a record, whether domestic or foreign, of regularly conducted business activity that would be admissible under rule 803(6), if accompanied by a written declaration under oath by its custodian or other qualified person certifying that
>
> (A) The record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> (B) The record was kept in the course of the regularly conducted business activity; and

---

[2] Ferris described petechiae as "burst blood vessels" caused by increased pressure in the head.

(C) It was the regular practice of the business activity to make the record.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

MRE 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The photographs in question were taken during AW's follow-up medical examination. Before trial, the prosecution filed a notice of its intent to introduce AW's certified medical records, which included these photographs, under MRE 902(11). The records were produced during discovery and were available to Durden before trial. Durden did not object to the prosecution's notice under MRE 902(11), and did not otherwise argue, either below or on appeal, that the proffered certified medical records did not satisfy the requirements of MRE 902(11) or MRE 803(6). In any event, the prosecution introduced, and the trial court admitted into evidence, the certificate from the custodian of the medical records. The certificate affirmed that the medical records, including the photographs, complied with the requirements of MRE 902(11). Accordingly, the trial court did not abuse its discretion by ruling that the medical records, including the photographs from AW's follow-up examination, were admissible without further authentication.

Durden also argues, for the first time on appeal, that admission of the photographs violated his rights under the Confrontation Clause because he could not cross-examine the person who took the photographs at AW's follow-up examination.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. See also Const 1963, art 1, § 20. The right of confrontation ensures that a witness testifies under oath at

trial and is available for cross-examination. *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008). In general, the Confrontation Clause bars the use of a witness's testimonial statements if the witness is unavailable for trial, unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

In *People v Dinardo*, 290 Mich App 280, 290-291; 801 NW2d 73 (2010), this Court held that machine-generated breath test results showing a defendant's blood alcohol level were nontestimonial. The results were "generated entirely by a machine without the input of any human analyst," and as such, there was no *witness* to confront about the results. *Id*. at 290. "The machine was the sole source of the test results, which spoke entirely for themselves," and no expert interpretation was required for the fact-finder to understand the results. *Id*. Therefore, because "a machine is not a witness in the constitutional sense," any "data automatically generated by a machine [is] accordingly nontestimonial in nature." *Id*. at 290-291.

Applied here, the right of confrontation is not implicated when photographs are offered into evidence because a photograph does not involve a witness bearing testimony and is nontestimonial. The analysis from *Dinardo* supports this conclusion because a photograph is entirely generated by a camera, and a camera is not a witness subject to cross-examination. Not only is a photograph nontestimonial, but it does not constitute a statement. A statement is "an oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). The photographs at issue did not involve any assertion of a person, and their contents "spoke entirely for themselves." *Dinardo*, 290 Mich App at 290. We also agree with the persuasive conclusions drawn by federal courts that have held that photographs are nontestimonial evidence.[3] See, e.g., *United States v Clotaire*, 963 F3d 1288, 1295 (CA 11, 2020) (holding that still frame pictures from a surveillance camera do not implicate the Confrontation Clause because "[s]urveillance cameras are not witnesses, and surveillance photos are not statements"); *United States v Lopez-Moreno*, 420 F3d 420, 436 (CA 5, 2005) (holding that a photocopy of an identification card is nontestimonial "because it in no way involves a witness bearing testimony").

Because the photographs at issue do not qualify as testimonial statements, they do not implicate Durden's rights under the Confrontation Clause. Accordingly, Durden has not demonstrated any plain error from admission of the photographs.

## B. CHARACTER EVIDENCE

Durden next argues that the trial court erred by precluding him from calling three defense witnesses. The witnesses were other women who Durden had met online and who would have testified that they engaged in consensual sex with Durden. Durden contends that this testimony was admissible as evidence of his character to show that he was not violent or likely to engage in forcible sexual activity with other women.

---

[3] Decisions from federal courts of appeals are not binding on this Court, but we may consider them for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

-5-

We review the trial court's decision to exclude the proposed testimony for an abuse of discretion. *Duncan*, 494 Mich at 722. Character evidence is generally not admissible to prove that the defendant acted in conformity with the allegations supporting the charged offenses. MRE 404(a). MRE 404(a)(1) does, however, authorize the accused to introduce evidence of a "pertinent trait of character." Under this rule, "a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). For example, a defendant's character for peacefulness is a pertinent character trait in a case involving alleged violent conduct. *People v Zitka*, 335 Mich App 324, 342; 966 NW2d 786 (2020).

Further, MRE 405 governs the methods of proving character. In all cases in which character evidence is admissible, "proof may be made by testimony as to reputation or by testimony in the form of an opinion." MRE 405(a). And only on cross-examination of a character witness, or when character is an essential element of the charge or defense, may proof of specific instances of the defendant's conduct be introduced. MRE 405(a); MRE 405(b). Still, another requirement to introduce character evidence—as with all evidence—is that the evidence must be relevant. See MRE 402 ("Evidence which is not relevant is not admissible."). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Thus, before determining whether the proposed evidence constitutes a "pertinent trait of character" under MRE 404(a)(1), the evidence must be "logically relevant." See *People v VanderVliet*, 444 Mich 52, 61-62; 508 NW2d 114 (1993) (stating that MRE 404 "presumes a showing of logical relevance" under MRE 401 and 402).

Durden attempted to offer the testimony of three women whom he had met online to show that he had consensual sexual relations with them without using force or coercion. Durden contends that their testimony would have refuted AW's and KM's testimony that he forced them to engage in sexual activity. According to Durden's offer of proof, however, the three witnesses all engaged in consensual sex with him.[4] Conversely, AW and KM both testified that they refused to consent to sexual activity with Durden. Although the testimony of the proposed witnesses was probative of Durden's character to engage in sexual relations with other consenting women, it was not probative of how Durden would react *when consent for sex was refused*. The type of character evidence that would have been relevant here would have been testimony from other women who met Durden online and refused to have sex with him. The fact that Durden did not become forceful or violent with other women who consented to sexual activity with him did not have any tendency to make it more or less probable whether he would act the same way when confronted with a

---

[4] The offer of proof stated that Durden's appellate counsel had spoken with trial counsel, and trial counsel confirmed that he had subpoenaed these three witnesses. The offer of proof continued:

> All three women were present in the courthouse during the trial and were prepared to testify on Mr. Durden's behalf. All three women were prepared to testify that they had met Mr. Durden online, and then subsequently met him in person. All three women engaged in sexual relations with Mr. Durden and none experienced violence or coercion by [Mr.] Durden.

-6-

woman who refused to consent to sex. Because the proffered evidence was not probative of Durden's character in this latter context, the evidence was not relevant under MRE 401. Accordingly, the trial court did not abuse its discretion by excluding this evidence.

Durden also argues that the trial court's exclusion of the proposed testimony violated his constitutional right to present a defense. We review this question of constitutional law de novo. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). "A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses." *Yost*, 278 Mich App at 379. However, this right is not absolute and sometimes must yield to the state's legitimate interests in implementing rules over the conduct of criminal trials. *Unger*, 278 Mich App at 250. The rules of evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Id*., quoting *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998), in turn quoting *Rock v Arkansas*, 483 US 44, 56; 107 S Ct 2704; 97 L Ed 2d 37 (1987). In particular, an accused's right to present a defense is not infringed by application of MRE 402, which helps to ensure the integrity of criminal trials by prohibiting the admission of irrelevant evidence. *Unger*, 278 Mich App at 250. Thus, "the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). Here, as explained above, the proposed evidence was not relevant to Durden's character toward women who refused to consent to sex. Accordingly, the trial court's exclusion of the evidence did not violate Durden's right to present a defense.

Further, Durden argues that defense counsel was ineffective for failing to argue the proper theory of admissibility for his proposed character evidence at trial. Durden raised this issue in a motion for a new trial, which the trial court denied. "To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008) (quotation marks and citation omitted). A defendant must overcome the presumption that counsel's challenged conduct might be considered sound trial strategy. *Id*.

At trial, defense counsel argued that the proposed testimony was intended to refute the prosecution's evidence that Durden had a modus operandi, or scheme, with respect to his pattern of behavior involving relationships with women he met online. On appeal, Durden complains that counsel should have instead argued for admission of the testimony as character evidence. In particular, Durden contends that trial counsel should have argued that KW's testimony "squarely put Mr. Durden's character and propensity on trial and therefore, at a minimum, opened the door to opinion testimony about his character." As already explained, however, the proposed testimony simply was not admissible due to its lack of relevance, even if offered for a character purpose. Thus, Durden cannot show that there is a reasonable probability that the trial court would have decided this issue differently if counsel had emphasized the character purpose of the evidence. Indeed, Durden argued this purpose in his motion for a new trial, and the trial court still determined, properly, that the evidence was not admissible. Therefore, Durden's ineffective-assistance claim also fails.

## C. PROSECUTORIAL MISCONDUCT

Durden also argues that he was denied a fair trial because the prosecutor made comments during closing argument that were not supported by the evidence at trial. Durden concedes that this issue is unpreserved because there was no objection to the prosecutor's remarks at trial. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Review of an unpreserved claim of prosecutorial misconduct is limited to whether plain error affecting substantial rights occurred. *Id*. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Id*. Prosecutors may not make a statement of fact that is unsupported by the evidence, but they may argue the evidence and reasonable inferences arising from the evidence in support of their theory of the case. *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003).

Durden argues that the following emphasized portion of the prosecutor's rebuttal argument was not supported by the evidence:

> Now, in this case, you heard from Nurse Ferris tell you what [AW] told her . . . . "He laid me on the bed, started touching, kissed me. I told him to stop. He did for a minute and then he started again. I tried to delay, he grabbed my arms, pinned them over my head. I said stop, he did for a second. He asked why I came over if we were not having sex. I said I came to just chill. I didn't want to have sex. The next thing I remember, he started choking me. I was screaming and tried to get away. My body went limp. He told me to stop yelling. I said let me up, I can't breathe. He let up. I was trying to leave, but he wouldn't let me. He told me to turn over, pulled my pants the rest of the way down and anally raped me. *I was supposed to be at work, and I told him I had to leave. He said that work wasn't that far. He was almost done.* He took a photo of my license. I got dressed and left." [Emphasis added.]

Durden contends that AW never testified that she told Durden that she needed to go to work and that Durden responded by telling her that her work was not far away and he was almost done. However, it is clear from the prosecutor's argument that the prosecutor was quoting AW's statement to Ferris, which Ferris repeated during her trial testimony. In that statement, AW reported: "I was supposed to be at work. I told him I had to leave. He said that work wasn't that far, and he was almost done." The prosecutor's remarks were supported by AW's statements to Ferris, which were a matter of evidence. Accordingly, the remarks were not improper.

Durden also argues that defense counsel was ineffective for failing to object to the prosecutor's remarks. Counsel need not make a futile objection. *Unger*, 278 Mich App at 256. Because any objection to the remarks would have been futile, defense counsel was not ineffective for failing to object.

## III. STANDARD 4 BRIEF

In his Standard 4 brief, Durden raises various evidentiary and constitutional challenges to his convictions. For the reasons explained below, Durden's arguments lack merit.

## A. RIGHT OF CONFRONTATION

First, Durden again challenges the admission of the photographs from AW's follow-up medical examination. He also argues that Ferris should not have been permitted to testify about the nurse's notes from that follow-up examination, which revealed that AW reported that she was experiencing a sore throat, headaches, memory loss, and neck pain and tenderness on that date.

As explained in Section II(A), the trial court did not abuse its discretion by admitting the photographs from AW's follow-up examination. Because Durden did not object to Ferris's testimony about the notes from the follow-up examination, our review of that claim is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763.

The notes, like the photographs, were part of AW's certified medical records. Therefore, they were admissible under MRE 902(11), even without the testimony of the person who prepared the notes.

Further, the introduction of the notes did not violate Durden's rights under the Confrontation Clause. "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v New Mexico*, 564 US 647, 657; 131 S Ct 2705; 180 L Ed 2d 610 (2011). "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.' " *Id*. at 659 n 6, quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006) (alterations in original).

In *Ohio v Clark*, 576 US 237, 246; 135 S Ct 2173; 192 L Ed 2d 306 (2015), the United States Supreme Court applied the "primary purpose" test to statements made to persons other than law enforcement officers—in that case, statements made by a three-year-old child to his teacher involving suspected child abuse. The Supreme Court held that the introduction of the child's statements at a criminal trial of the child's abuser did not violate the Confrontation Clause because the primary purpose of the conversation with the teacher "was to protect a vulnerable child who needed help," not "to gather evidence for [the defendant's] prosecution." *Id*. at 247. In reaching its conclusion, the Supreme Court emphasized the informality of the conversation at issue and the nature of the teacher-student relationship. *Id*. at 247-249. "Courts must evaluate challenged statements in context, and part of that context is the questioner's identity. Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id*. at 249.

This Court has also previously held that statements made to a SANE are nontestimonial where the primary purpose of the nurse's questions and examination is to meet an ongoing emergency. *People v Garland*, 286 Mich App 1, 11; 777 NW2d 732 (2009). See also *People v Spangler*, 285 Mich App 136, 154; 774 NW2d 702 (2009) ("[T]o determine whether a sexual abuse victim's statements to a SANE are testimonial, the reviewing court must consider the totality of the circumstances of the victim's statements and decide whether the circumstances objectively indicate that the statements would be available for use in a later prosecution or that the primary

purpose of the SANE's questioning was to establish past events potentially relevant to a later prosecution rather than to meet an ongoing emergency.").

Ferris testified that AW was referred to HAVEN after visiting the emergency room on the day of the assault. After this initial examination, AW agreed to come back for a follow-up examination a few weeks later. The notes at issue merely referenced AW's physical condition as reported at the follow-up examination, which helped determine whether AW's observable and disclosed symptoms were a natural variance or an actual injury. There was no evidence that the police attended the follow-up investigation, or that the examining nurse was personally involved in the investigation of Durden. In fact, defense counsel specifically asked Ferris whether her role as a SANE was to investigate crime, and Ferris responded, "My job is to take care of the patient" and later stated, "I am not investigating a crime at all." As Ferris explained, SANEs are specially trained as nurses to treat victims of sexual assault. On this record, the totality of the circumstances shows that AW's statements during her follow-up examination were reasonably necessary for medical diagnosis and treatment. Because the objective circumstances do not show that the primary purpose of the SANE's questioning was to establish past events relevant to a later prosecution, the notes qualify as nontestimonial and do not implicate the Confrontation Clause. *Garland*, 286 Mich App at 11. Accordingly, Durden has established no plain error in the admission of Ferris's testimony about the follow-up examination.

## B. JURY INSTRUCTIONS

Next, Durden argues that the trial court erred by failing to instruct the jury on the defense of consent, and by failing to instruct the jury on the lesser offense of third-degree criminal sexual conduct (CSC-III), MCL 750.520d. We generally review claims of instructional error de novo to the extent that they involve questions of law. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "But a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id*. (quotation marks and citation omitted).

Here, however, Durden did not request either a consent instruction or lesser-offense instruction at trial. Moreover, before closing arguments, the trial court discussed its proposed jury instructions with the parties. The prosecutor objected to the court's inclusion of the consent instruction for CSC, M Crim JI 20.27, because no evidence of consent had been presented. The trial court agreed, and defense counsel failed to object. Then, after the trial court instructed the jury, it asked the attorneys if there were "any changes or corrections to the instructions as read" and defense counsel replied, "No, your Honor." Because defense counsel affirmatively approved of the instructions as given, any claim of instructional error is waived. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011) ("[B]y expressly . . . approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review.").

Durden also argues that trial counsel was ineffective for not requesting a jury instruction on consent. Because Durden did not raise this ineffective-assistance claim in an appropriate motion in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Again, "[t]o establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below

an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different." *Brown*, 279 Mich App at 140 (quotation marks and citation omitted). A defendant must overcome the presumption that counsel's challenged conduct might be considered sound trial strategy. *Id.*

"Jury instructions must include all the elements of the charged offense, and must not exclude material issues, defenses, or theories if the evidence supports them." *People v Kosik*, 303 Mich App 146, 155; 841 NW2d 906 (2013). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Crawford*, 232 Mich App 608, 620; 591 NW2d 669 (1998). Consent is an affirmative defense and "lack of consent is not an element of the crime to be proven by the prosecution." *People v Waltonen*, 272 Mich App 678, 689 n 4; 728 NW2d 881 (2006). "In the context of the CSC statutes, consent can be utilized as a defense to negate the elements of force or coercion." *Id.* at 689. The consent instruction for CSC, M Crim JI 20.27, informs the jury that "[a] person consents to a sexual act by agreeing to it freely and willingly, without being forced or coerced." As an affirmative defense, Durden needed to present some evidence on all elements of the consent defense before the trial court had to instruct the jury on it. See *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013).

There was no direct evidence presented that AW consented to any sexual activity with Durden. AW denied consenting, and Durden presented no evidence that he and AW engaged in sexual activity, let alone that any such activity was consensual. The two defense witnesses who were called at trial merely testified that they were present in Durden's apartment on the date of the offense and did not hear anyone scream or call for help. The record thus did not clearly support giving a consent instruction because there was little, if any, evidence that AW engaged "freely and willingly" in sexual acts with Durden. M Crim JI 20.27. Any objection that defense counsel made would have been futile because the trial court was not required to instruct on the consent defense.[5] Accordingly, defense counsel was not ineffective for failing to make a futile objection. *Unger*, 278 Mich App at 256.

Even if the consent instruction should have been requested by trial counsel, Durden cannot show that any failure to do so prejudiced him. In *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004), this Court discussed, in the context of reviewing an ineffective-assistance-of-counsel claim, defense counsel's failure to request a consent instruction in a case in which the defendant was charged with CSC-I for engaging in sexual penetration accomplished by force or coercion and causing personal injury. This Court held that the defendant's argument did not require reversal because, by instructing the jury that it could not find the defendant guilty beyond a reasonable doubt unless it found that the sexual penetration had occurred through force or coercion, the court "implicitly required the jury to find that the complainant did not consent to

---

[5] At the very least, the trial court's decision to remove the consent instruction based on the lack of evidence presented was not an abuse of discretion because it was within the bounds of reasonable outcomes. See *Gillis*, 474 Mich at 113.

sexual intercourse before it could find defendant guilty." *Id.*, quoting *People v Johnson*, 128 Mich App 618, 623; 341 NW2d 160 (1983).

Here, the trial court instructed the jury that, for the charge of CSC-I involving the use of force or coercion to accomplish sexual penetration, MCL 750.520b(1)(f), the jury had to find the element of force or coercion beyond a reasonable doubt. Defense counsel also raised the issue of consent during closing argument and, even without the instruction on consent, the jury would have considered consent in evaluating whether the prosecution proved the necessary element of force or coercion. Further, AW's testimony that she did not consent to the sexual activity was heavily corroborated, both by testimony from her boss, her coworker, and Ferris, and through the medical evidence. Consequently, there is not a reasonable probability that, but for the absence of a consent instruction, the jury would have acquitted Durden of CSC-I.

## C. DOUBLE JEOPARDY

Durden also argues that the prosecutor's "statements to the jury misled them into the violating the double jeopardy clause" because it was improper to state that Durden could be convicted of CSC-I using the assault by strangulation charge as the underlying felony. We construe Durden's argument as raising a claim of prosecutorial misconduct predicated on a double jeopardy violation. "A double jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

Const. 1963, art. 1, § 15 states that "[n]o person shall be subject for the same offense to be twice put in jeopardy." The federal Constitution similarly provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Am V. Our Supreme Court has stated that "the Michigan and federal double jeopardy clauses should be construed in a parallel fashion." *People v Smith*, 478 Mich 292, 302 n 7; 733 NW2d 351 (2007). "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Nutt*, 469 Mich at 574.

In *People v Ream*, 481 Mich 223, 225; 750 NW2d 536 (2008), the Supreme Court addressed whether it violates double jeopardy for a defendant to be convicted and sentenced for both felony murder and the underlying felony. The Court held that "convicting and sentencing a defendant for both first-degree felony murder and the predicate felony does not violate the 'multiple punishments' strand of the Double Jeopardy Clause if each offense has an element that the other does not." *Id.* at 240. The Court observed that "[f]irst-degree felony murder contains an element not included in first-degree criminal sexual conduct, namely, the killing of a human being" and "first-degree criminal sexual conduct contains an element not necessarily included in first-degree felony murder, namely, a sexual penetration." *Id.* In its analysis, the Court in *Ream* also expressed its agreement with the conclusion in *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984), overruled on other grounds in *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), "that convicting and sentencing a defendant for both first-degree criminal sexual conduct [under MCL 750.520b(1)(c)] and the predicate 'other' felony does not violate the 'multiple punishments' strand of the Double Jeopardy Clause." *Ream*, 481 Mich at 232.

-12-

In this case, Durden was charged with CSC-I under multiple theories. He was charged with CSC-I under the alternative theories that (1) he engaged in sexual penetration accomplished by force or coercion and caused personal injury, MCL 750.520(b)(1)(f), and (2) he engaged in sexual penetration "under circumstances involving the commission of any other felony," namely, assault by strangulation, MCL 750.520b(1)(c).[6] At issue here is whether convictions of CSC-I predicated on sexual penetration during the commission of any other felony, MCL 750.520b(1)(c), and the "other felony" violate the "multiple punishments" strand of double jeopardy. Therefore, the operative question for purposes of Durden's double jeopardy argument is whether the offenses of assault by strangulation and CSC-I each contain an element that the other does not.

In *People v Lydic*, 335 Mich App 486, 498 n 9; 967 NW2d 847 (2021), this Court explained the elements of assault by strangulation:

> MCL 750.84(1)(b) criminalizes "[a]ssault[ing] another person by strangulation or suffocation." An "assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). And a "battery is the consummation of an assault." *Id.* Additionally, MCL 750.84(2) defines "strangulation or suffocation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person."

The elements of the CSC-I charge at issue are that (1) the defendant engaged in sexual penetration with another person, (2) under circumstances involving the commission of any other felony. MCL 750.520b(1)(c).

Thus, assault by strangulation contains an element not included in CSC-I—strangulation of another person—and CSC-I contains an element not included in assault by strangulation—a sexual penetration. Although Durden's commission of an assault by strangulation was used as the aggravating factor to support the CSC-I charge, CSC-I does not necessarily require proof of an assault by strangulation. Put differently, it is possible to commit CSC-I without first committing an assault by strangulation. Because CSC-I and assault by strangulation each contain an element that the other does not, the offenses are not the "same offense" under the multiple punishment strand of double jeopardy. See *Ream*, 481 Mich at 242. Therefore, Durden may be punished separately for each offense. Accordingly, there is no merit to Durden's claim that the prosecutor violated his double-jeopardy protections.

## D. HEARSAY

Durden next argues that the trial court erred by allowing inadmissible hearsay testimony from AW's coworker and Ferris on their conversations with AW. Because Durden did not object

---

[6] The jury did not specify whether it found Durden guilty under one or both theories.

to the challenged testimony at trial, these claims are unpreserved and reviewed for plain error affecting Durden's substantial rights. *Carines*, 460 Mich at 763.

First, Durden argues that testimony from AW's coworker about statements made by AW disclosing the sexual assault was inadmissible hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible unless it falls within an established exception to the hearsay rule. MRE 802. MRE 803(2) provides an exception to the rule for excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). Thus, there are two requirements for admitting a statement as an excited utterance: "1) that there be startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). Although the passage of time is a relevant consideration, "there is no express time limit for excited utterances." *Id.* at 551.

In this case, AW spoke to her coworker shortly after leaving Durden's apartment. AW explained that after leaving Durden's apartment, she went directly to work, which was nearby, and was met by her coworker. The coworker testified that AW was shaking and crying when she arrived at work. The coworker took AW to the police station. AW did not at first tell the coworker what happened, but after ten minutes when they were at the station, AW, who was still visibly upset and crying, told her what happened. According to the coworker, AW "explained that she was raped, and, you know, very torn by the situation." While at the hospital, AW was still visibly upset and provided more detail, telling the coworker that she was anally raped by someone she met online.

The record reveals that the requirements for an excited utterance were satisfied. AW's statements related to a sexual assault, which qualifies as a startling event. See *Smith*, 456 Mich at 552 ("There can be no question that the sexual assault in this case was a startling event."). AW was also still under the stress or excitement caused by the event when she made the statements to her coworker. AW proceeded directly to work after the assault, and she was shaking, crying, and visibly upset, which were indications that she was still under the stress of excitement caused by the sexual assault when she spoke to her coworker. Accordingly, AW's statements to her coworker were properly admitted under MRE 803(2) as excited utterances.

Durden also argues that AW's statements to Ferris did not qualify as excited utterances because they were made five hours after the startling event. But the record does not reflect that AW's statements to Ferris were offered as excited utterances. Rather, they qualified for admission under MRE 803(4), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (4) Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection with Treatment. Statements made for purposes of medical

treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

"The rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *Garland*, 286 Mich App at 8-9.

It is undisputed that AW's statements to Ferris were made during Ferris's medical examination of AW, which occurred the same day as the sexual assault. AW's statements to Ferris were also reasonably necessary for AW's diagnosis and treatment. In sexual assault examinations, having the "victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). As Ferris testified, she asked AW why she came in for the forensic medical examination and about her medical history because these questions "guide[]" the examination of the patient. AW's responses, introduced through Ferris's testimony, undoubtedly qualified as statements made for the purpose of medical treatment or diagnosis under MRE 803(4). Accordingly, these statements were properly admitted.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Durden next argues that his counsel committed several errors that amount to ineffective assistance of counsel.

Again, our review of these issues is limited to mistakes apparent on the record.[7] *Lopez*, 305 Mich App at 693. "To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different." *Brown*, 279 Mich App at 140 (quotation marks and citation omitted). A defendant must overcome the presumption that counsel's challenged conduct might be considered sound trial strategy. *Id*.

Durden first argues that counsel was ineffective for failing to present evidence of a text message that AW allegedly sent to Durden's girlfriend in which AW admitted that the allegations against Durden were false. This issue was discussed at sentencing. The prosecutor advised that the matter was investigated by an expert in the computer crimes division, who determined that the purported text message was fraudulent. The expert examined AW's telephone and was willing to testify that there were no messages on AW's phone that were sent to the girlfriend's phone; the records for AW's account similarly showed that no messages were sent to Durden's girlfriend.

---

[7] Durden raised some of these ineffective-assistance arguments in a *pro se* motion for a new trial, but the trial court declined to consider the motion because it was not properly filed. Durden never refiled or renewed the motion.

Further, when the prosecutor asked to examine Durden's girlfriend's telephone, she said that she no longer had that phone. Defense counsel explained at sentencing that he was also aware of the message at the time of trial:

> We discussed the text message. That's the reason we didn't call that particular witness and address that issue during the trial because we couldn't verify that it was a viable text message or couldn't verify its origin.

To the extent that Durden argues that defense counsel was ineffective for not calling his girlfriend to testify about the text message that she claimed to have received from AW, the available record shows that this issue was investigated by the prosecutor and defense counsel, and that the text message was believed to be fraudulent. Under these circumstances, it was not objectively unreasonable for defense counsel not to pursue or attempt to admit this evidence. Presenting evidence of this text message might have harmed Durden's case by allowing the jury to find that Durden knew about or encouraged the fabrication of evidence, thereby supporting an inference of consciousness of guilt.[8] Therefore, Durden has not shown that trial counsel was ineffective for declining to introduce this evidence at trial.

Next, Durden argues that defense counsel was ineffective for not calling or consulting an expert witness to review AW's claim of strangulation to determine whether it was consistent with the medical evidence. Although Durden emphasizes that AW showed no visible signs of having been strangled, such as marks around her neck, when she was examined, an expert was unnecessary to establish this point. Ferris admitted that there were no visible signs of injury on AW's neck at the time of AW's examination. Ferris explained that the pressure necessary to affect a person's breathing can be less than what is necessary to cause visible injuries. Ferris also testified that she relied on other evidence to conclude that AW had symptoms consistent with being strangled, such as her description of being unable to breathe, dizziness, headaches, memory loss, and the petechiae observed in AW's eyes.

Durden asserts that defense counsel should have consulted an expert to determine whether AW's claim of strangulation was consistent with the medical evidence, but Durden has not provided an offer of proof, such as an affidavit from a proposed expert, showing what testimony an expert could have provided if called. Without an appropriate offer of proof, Durden has not met his burden of establishing the factual predicate for his claim that counsel was ineffective for not calling a defense expert or investigating whether an expert's testimony might have assisted the defense. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (noting that the "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel").

Durden also argues that defense counsel was ineffective for not impeaching AW's testimony that she had bruising on her neck. Durden contends that this testimony conflicted with the medical records, which revealed that AW had no visible injuries to her neck at the time of her

---

[8] At sentencing, the prosecutor also shared that a letter was sent and addressed to AW's mother from a nonexistent law firm claiming that AW had perjured herself. The prosecutor believed that the letter was illegitimate and shared the letter with the trial court.

examination.   Although defense counsel did not directly question AW about this alleged inconsistency, he emphasized throughout trial that the medical records did not show that there was any injury to AW's neck.  During closing argument, defense counsel relied on the medical records to argue that AW had normal range of motion in her neck and that her neck was supple at the time of her examination, which contradicted AW's disclosed injuries.  Counsel urged the jury to look at the photographs of AW, which he argued showed that she had no injuries, such as scratches, abrasions, contusions, or bruising to her neck.  He argued that the medical records showed that there were no neck injuries to support that AW was strangled.  While defense counsel could have questioned AW directly about the alleged inconsistency between her testimony about bruising and what was depicted in photographs and medical records, counsel reasonably may have concluded that such questioning would have allowed AW to explain that the bruising did not appear until after she was examined by Ferris, and had healed by the time of the follow-up examination.  Under the circumstances, Durden has not overcome the presumption that counsel's decision to instead use the medical records and photographs to argue that AW's testimony was not credible was a reasonable trial strategy.

Durden also complains that defense counsel induced him not to testify by telling him that testifying did not work out for his last three clients.  But the record shows that Durden voluntarily waived his right to testify at trial.  Defense counsel asked Durden a series of questions on the record, and Durden confirmed that he would not testify, that this was his own decision, and that no one had coerced or forced him to make that decision.  Accordingly, the record does not support this ineffective-assistance claim.

Lastly, Durden contends that he disagreed with defense counsel about whether to request a bench trial.  Nothing in the record suggests that Durden expressed a preference for a bench trial. In any event, whether to request a bench trial is a matter of strategy that an appellate court will not second-guess.  See *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). The fact that a strategy did not succeed does not mandate a conclusion that counsel was ineffective. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).  Nor is there any basis for concluding that the outcome of Durden's trial would have been different if he had been tried before a judge instead of a jury.  Accordingly, Durden's claims of ineffective assistance of counsel lack merit.

## F.  PERJURY

Finally, Durden argues that the prosecutor knowingly used perjured testimony from AW because she testified that she had bruises on her neck from being strangled by Durden, but Ferris testified that AW did not have any visible injuries to her neck during the medical examination. This issue was not properly preserved before the trial court, and therefore we review it for plain error affecting Durden's substantial rights. *Carines*, 460 Mich at 763.

A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015).  "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). To this end, a prosecutor has a duty to correct false evidence when it is presented, including

-17-

evidence related to a witness's credibility. *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled on other grounds in *People v Chenault*, 495 Mich 142, 152; 845 NW2d 731 (2014). That said, merely because testimony conflicts with another witness's testimony does not compel the conclusion that the prosecutor knowingly used perjured testimony. See *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016) ("Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false.").

Ferris's testimony that there were no visible injuries to AW's neck at the time of the initial medical examination does not establish that AW's testimony about bruises on her neck was false, because AW's testimony was not restricted to the date of this examination. AW also did not specify when the bruising on her neck first developed. In any event, this alleged inconsistency was presented to the jury, thereby enabling it to assess AW's credibility. Accordingly, because Durden has not established that the prosecutor knowingly introduced, or failed to correct, perjured testimony, there was no due-process violation.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett